UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————— X
                                            :
PETER BRIMELOW,                             :
                                            :
                    Plaintiff,              :
                                            :       20-cv-00222-KPF
            - against -                     :
                                            :
NEW YORK TIMES COMPANY,                     :
                                            :
                    Defendant.              :
———————————————————————————— X


# MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS


David E. McCraw
Dana R. Green
Alexandra Perloff-Giles
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-4634
mccraw@nytimes.com

*Attorneys for Defendant*

# TABLE OF AUTHORITIES

<u>Cases</u>

*Anglo-German Progressive Fund, Ltd. v. Concorde Grp., Inc.*,
   2010 U.S. Dist. LEXIS 98237 (S.D.N.Y. Sep. 14, 2010) ............................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................12, 22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................................12

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) ....................................................................13, 23

*Borzellieri v. Daily News, LP*,
   39 Misc. 3d 1215(A) (N.Y. Sup. Ct., Apr. 22, 2013)....................................................16

*Buckley v. Littell*,
   539 F.2d 882 (2d Cir. 1976)....................................................................................15, 16

*Cabello-Rondon v. Dow Jones & Co.*,
   720 F. App'x 87 (2d Cir. 2018)....................................................................................22

*Cardone v. Empire Blue Cross & Blue Shield*,
   884 F. Supp. 838 (S.D.N.Y. 1995)..............................................................................20

*Carto v. Buckley*,
   649 F. Supp. 502 (S.D.N.Y. 1986)..............................................................................16

*Celle v. Filipino Reporer Enters.*,
   209 F. 3d 163 (2d Cir. 2000)..........................................................................14, 17, 24

*Cianci v. New Times Publ'g Co.*,
   639 F. 2d 54 (2d Cir. 1980)..........................................................................................15

*Contemporary Mission v. The New York Times Co.*,
   842 F.2d 612 (2d Cir. 1988)..........................................................................................22

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)..............................................................................................3

*Dongguk Univ. v. Yale Univ.*,
   734 F.3d 113 (2d Cir. 2013)..........................................................................................23

*Egiazaryan v. Zalmayev*,
   880 F. Supp. 2d 494 (S.D.N.Y. 2012)..........................................................................18

i

*Fulani v. N.Y. Times Co.*,
   260 A.D.2d 215 (1st Dep't 1999) ........................................................................20

*Gibson v. Craigslist, Inc.*,
   2009 U.S. Dist. LEXIS 53246 (S.D.N.Y. June 15, 2009) ....................................21

*Gilman v. Spitzer*,
   538 F. App'x 45 (2d Cir. 2013) ...........................................................................19

*Gross v. N.Y. Times*,
   82 N.Y.2d 146 (1993) ...................................................................................14, 15

*Guccione v. Hustler Magazine, Inc.*,
   800 F.2d 298 (2d Cir. 1986) ................................................................................25

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U. S. 657 (1989) ....................................................................................22, 23

*Held v. Pokorny*,
   583 F. Supp. 1038 (S.D.N.Y. 1984) .....................................................................16

*Immuno AG v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ..........................................................................................14

*In re J.P. Jeanneret Assocs.*,
   769 F. Supp. 2d 340 (S.D.N.Y. 2011) ....................................................................3

*In re Phila. Newspapers, LLC*,
   690 F.3d 161 (3d Cir. 2012) ................................................................................21

*Jorjani v. N.J. Inst. of Tech.*,
   2019 U.S. Dist. LEXIS 39026 (D.N.J. Mar. 11, 2019) .........................................16

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ................................................................................19

*Mann v. Abel*,
   10 N.Y.3d 271 (2008) ..........................................................................................14

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) .................................................................................................13

*Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*,
   326 F. Supp. 3d 26 (S.D.N.Y. 2018) ....................................................................21

*Morgan v. NYP Holdings, Inc.*,
   2017 N.Y. Misc. LEXIS 5035 (Sup. Ct. Kings Cty. Dec. 15, 2017) .................15, 18

*N.Y. Times v. Sullivan*,
    376 U.S. 254 (1964) ........................................................................................22

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013) ............................................................................14

*Ratajack v. Brewster Fire Dep't Inc.*,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016) ..............................................................16

*Russell v. Davies*,
    97 A.D.3d 649 (2d Dep't 2012) .......................................................................16

*Silverman v. Daily News, L.P.*,
    129 A.D.3d 1054 (2d Dep't 2015) ....................................................................15

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ........................................................................................22

*Staehr v. Hartford Fin. Servs. Grp.*,
    547 F.3d 406 (2d Cir. 2008) ..............................................................................3

*Steinhilber v. Alphonse*,
    68 N.Y. 2d 283 (1986) .....................................................................................14

*Stevens v. Tillman*,
    855 F.2d 394 (7th Cir. 1988) ...........................................................................16

*Three Amigos SJL Res., Inc. v. CBS News Inc.*,
    28 N.Y.3d 82 (2016) ........................................................................................19

*Vazquez v. Buhl*,
    150 Conn. App. 117 (Conn. App. Ct. 2013) ....................................................21

*Weinstein v. Friedman*,
    1996 U. S. Dist. LEXIS 3672 (S.D.N.Y. Mar. 26, 1996)..................................13

*Winn v. Associated Press*,
    903 F. Supp. 575 (S.D.N.Y. 1995) ..................................................................21

Statutes

Immigration and Nationality Act of 1965, 8 U.S.C. §§ 1101 *et seq.*.................................5

Other Authorities

*Alien Nation: Common Sense About America's Immigration Disaster* (1995) ..........................3, 4

Ben Shapiro, *Conservatives Oust Bigotry, and the Left Only Slams Them For It*, National
    Review (Aug. 28, 2018) ...................................................................................24

Brianna Ehley, *Trump: I don't want David Duke's endorsement*, Politico (Aug. 26, 2015) ........24

Caitlin Dewey, *Amazon, PayPal and Spotify inadvertently fund white supremacists. Here's how.*, Wash. Post (Mar. 17, 2015) ..................................................24

Caroline Kelly, *Immigration judges at DOJ were sent news briefing with link to anti-Semitic content*, CNN (Aug. 23, 2019) ..................................................24

Christine Hauser, *Justice Department Newsletter Included Extremist Blog Post*, N.Y. Times (Aug. 23, 2019) ..................................................9

David A. Reed, *America of the Melting Pot Comes to an End*, N.Y. Times (Apr. 27, 1924)..................................................5

Dean Obeidallah, *Trump's Mainstreaming of "Chain Migration": A White Supremacist's Dream*, Daily Beast (Feb. 1, 2018) ..................................................24

Elliot Hannon, *Justice Department Sent Immigration Judges Anti-Semitic Blog Post From White Nationalist Hate Group*, Slate (Aug. 23, 2019) ..................................................24

Emma Green, *The Nationalists Take Washington*, The Atlantic (July 17, 2019)........................24

Francis Fukuyama, *Alien Nation Review: Culture Vulture*, VDARE (May 1, 1995)....................4

Jack Stubbs & Katie Paul, *Facebook Says It Dismantles Disinformation Network Tied to Iran's State Media*, Reuters (May 5, 2020)..................................................11

James Fulford, *SLATE's Osita Nwanevu Interviews Peter Brimelow At CPAC*, VDARE (Feb. 24, 2018) ..................................................6

James Fulford, *Yes, Virginia (DARE), There IS Hispanic 'Ethnic Specialization' In Child Rape. The Totalitarian Left Just Doesn't Want You To Know*, VDARE (Mar. 18, 2019)...........7

Jane Coaston, *Peter Brimelow and VDare, the white nationalist website with close ties to the right, explained*, Vox (Sept. 24, 2018) ..................................................24

Katie Benner, *Top Immigration Judge Departs Amid Broader Discontent Over Trump Policies*, N.Y. Times (Sept. 13, 2019) ..................................................10

Katie Rogers & Jason DeParle, *The White Nationalist Websites Cited by Stephen Miller*, N.Y. Times (Nov. 18, 2019)..................................................10

Michael Lind, *Alien Nation Review: American By Invitation*, VDARE (Apr. 24, 1995)...............4

Peter Brimelow & Jared Taylor, *"A Public/Private Initiative to Curtail Debate"--The Op-Ed The NYT Wouldn't Run*, VDARE (Sept. 9, 2017) ..................................................17

Peter Brimelow, *"This Isn't A Free Country": The Heritage Foundation And The Fate Of Jason Richwine*, VDARE (May 11, 2013)..................................................7

Peter Brimelow, *Blumenthal vs. Brimelow, Again*, VDARE (Feb. 26, 2006) .................................8

Peter Brimelow, *Brimelow Remembers Tanton: "A Citizen Who Took Up Arms For His Country*," VDARE (Dec. 26, 2019)....................................................................................5, 6, 7

Peter Brimelow, *In Memoriam Sam Francis (April 29, 1947 – February 15, 2005)*, VDARE (Feb. 16, 2005) ........................................................................................................6

Peter Brimelow, *INSIDER'S Nicole Einbinder interviews VDARE.com's Peter Brimelow: "'White Supremacist' Is The Equivalent of Me Calling You a Communist"*, VDARE (Apr. 4, 2019)...................................................................................................................6, 8

Peter Brimelow, *Is VDARE. COM "White Nationalist"?*, VDARE (July 24, 2006) .....................5

Peter Brimelow, *John Tanton vs. SPLC: Let's See Some Treason Lobby Letters*, VDARE (Sept. 21, 2008) ...............................................................................................................6

Peter Brimelow, *San Bernardino: The Answer Is An Immigration Moratorium—And Muslim Expulsion*, VDARE (Dec. 4, 2015) ....................................................................7

Peter Brimelow, *What's 'White Nationalist' about Official English anyway?*, VDARE (June 23, 2009) ........................................................................................................................5

Reed Ueda, *Alien Nation Review: Natterings of a Neo-Nativist*, VDARE (Apr. 18, 1995)............4

Reis Thebault, *Federal judges received a link to an anti-Semitic blog post. It came from the Justice Department.*, Wash. Post (Aug. 23, 2019) .............................................................24

Sam Thielman, *The fascist next door: how to cover hate*, Colum. Journalism Rev. (Aug. 14, 2019)..................................................................................................................................24

Sofia Resnick, *VIDEO: Peter Brimelow attacks multiculturalism at CPAC*, Colo. Indep. (Feb. 9, 2012) .....................................................................................................................11

SPLC, *Peter Brimelow*, htttps://www.splcenter.org/fighting-hate/extremist-files/individual/peter-brimelow.............................................................................................9

SPLC, *VDARE*, https://www.splcenter.org/fighting-hate/extremist-files/group/vdare ................11

Trip Gabriel, *A Timeline of Steve King's Racist Remarks and Divisive Actions*, N.Y. Times (Jan. 15, 2019).............................................................................................................8

U.S. Department of State Office of the Historian, *The Immigration Act of 1924 (The Johnson-Reed Act)*...............................................................................................................5

VDARE, https://vdare.com/about .................................................................................................2, 5

VDARE, https://vdare.com/donate ....................................................................................................4

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ......................................................................................... 2

   I.    PETER BRIMELOW ........................................................................ 2

        A.     Alien Nation ...................................................................... 3

        B.     VDARE: "My head is with racial nationalism"................... 4

  II.    THE ARTICLES ............................................................................... 8

        A.     The January Article............................................................ 8

        B.     The August Article............................................................. 9

        C.     The September Article ..................................................... 10

        D.     The November Article ...................................................... 10

        E.     The Reuters Article ......................................................... 11

  III.   THE COMPLAINT ......................................................................... 12

LEGAL STANDARD................................................................................ 12

ARGUMENT ............................................................................................ 13

   I.    TERMS LIKE "WHITE NATIONALIST," "WHITE SUPREMACIST," OR "ANTI-SEMITIC" ARE STATEMENTS OF OPINION ........................................................... 13

        A.     Statements of Opinion Are Given Broad Protection Under New York Law........ 13

        B.     Labels Like "White Nationalist" and "White Supremacist" Are Not Susceptible to Being Proved True or False ....................................................... 15

        C.     Characterizing Speech As "Anti-Semitic" Is Non-Actionable Opinion ............... 17

  II.    STATEMENTS REGARDING THE WEBSITE VDARE.COM ARE NOT "OF AND CONCERNING" PLAINTIFF AS A MATTER OF LAW.............................................. 19

  III.   HYPERLINKING TO A WEBSITE DOES NOT GIVE RISE TO A DEFAMATION CLAIM.................................................................................................... 21

IV.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE BRIMELOW HAS NOT
        PLAUSIBLY ALLEGED THAT THE TIMES ACTED WITH ACTUAL MALICE .... 22

CONCLUSION........................................................................................................................... 25

Defendant The New York Times Company ("The Times"),[1] publisher of *The New York Times* and www.nytimes.com, respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Peter Brimelow spends much of his 41-page complaint discoursing on journalism, immigration, the history of libel, and other topics, most of it gratuitous and irrelevant to his legal case. When he finally turns to the task at hand, he alleges that his reputation was harmed to the tune of $5 million dollars by recent *Times* articles referring to him or the website he founded, VDARE, as "white nationalist," "white supremacist," or "anti-Semitic," and hyperlinking to the Southern Poverty Law Center's summary of his hateful rhetoric.

Those characterizations would surprise no one who has followed Brimelow's career as a voice of extremism on race and immigration. In recent years, in a vast volume of work referenced by his own complaint, Brimelow has written defenses of white nationalism as a "legitimate" ideology, eulogized individuals he describes as white nationalists in glowing terms, given speeches alongside avowed white nationalists, and routinely published, as editor of VDARE, articles authored by self-described white nationalists or espousing white nationalist doctrine. Brimelow himself has advanced theories at the heart of white nationalism, including that there is a scientific link between race and IQ, that non-white people are more prone to commit crimes, that "the US is a white nation," and that Americans should restrict non-white immigration in order to "shift" the nation's demographics back to a time when the population was 90% white. Brimelow now comes to this Court to play word games about how his fringe

---

[1] Incorrectly sued herein as New York Times Company.

views should be characterized—whether he is a "civic nationalist" and not a white nationalist or something else. But none of his philosophical hair-splitting can get around the fact that his legal claims are entirely without legal merit and his complaint should be dismissed in its entirety. First, terms like white nationalist, which he alleges to be defamatory, are not factual statements but instead statements of opinion protected by New York law and the First Amendment. Second, his claim that the publishing of a hyperlink can be a form of defamation has been resoundingly rejected by the courts. Third, he is wrong as a matter of law in asserting that statements about the website VDARE, a formally established nonprofit corporate entity, can form the basis for his personal claims of defamation. Those statements about a separate legal entity are not "of and concerning" Brimelow. Finally, even if Brimelow were able to overcome these deficiencies, he cannot plausibly allege that The Times knew that he was not a white nationalist and therefore published the statements about him with actual malice.

## BACKGROUND

### I.    PETER BRIMELOW

Plaintiff Peter Brimelow is a prominent and outspoken opponent of non-white immigration to the United States. He is the author of the book *Alien Nation: Common Sense About America's Immigration Disaster*, and the founder and editor of VDARE.com ("VDARE"), a website named after Virginia Dare, "the first English child to be born in the New World." VDARE, https://vdare.com/about; Second Amended Complaint ("Compl."), ¶¶ 6, 11, 112. Together, *Alien Nation* and VDARE comprise the substance of Brimelow's "original writings,"

2

to which he alleges The Times was insufficiently attentive in its reporting. Compl. ¶¶ 57, 124, 142, 156, 178.[2]

### A.    Alien Nation

In *Alien Nation*, Brimelow argues that American immigration law since 1965 has had a "disastrous" and "catastroph[ic]" effect on American identity, which he defines in racial terms. Peter Brimelow, *Alien Nation: Common Sense About America's Immigration Disaster* 56, 150 (1995) [hereinafter *Alien Nation*]. The thesis of his book is perhaps best captured by this passage:

> The American nation of 1965, nearly 90 percent white, was explicitly promised that the new immigration policy would not shift the country's racial balance. But it did. . . . It is simply common sense that Americans have a legitimate interest in their country's racial balance. It is common sense that they have a right to insist that their government stop shifting it. Indeed it seems to me that they have a right to insist that it be shifted back.

*Id.* at 264.

Brimelow describes modern American immigration policy as "Adolf Hitler's posthumous revenge on America," *id.* at xv, and contends that "the American nation has always had a specific ethnic core. And that core has been white," *id.* at 10. He asserts that "the role of ethnicity and race has proved to be elemental—absolute—fundamental," *id.* at 125, and laments that the United States "faces . . . the breaking of . . . 'the racial hegemony of white Americans,'" *id.* at

---

[2] Brimelow's writings in *Alien Nation* and on VDARE are incorporated by reference in the complaint, as he possessed those writings and relied upon them in bringing this action. *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991); *In re J.P. Jeanneret Assocs.*, 769 F. Supp. 2d 340, 354–55 (S.D.N.Y. 2011); *Anglo-German Progressive Fund, Ltd. v. Concorde Grp., Inc.*, 2010 U.S. Dist. LEXIS 98237, at *8–10 (S.D.N.Y. Sep. 14, 2010). Indeed, Brimelow cites VDARE more than 40 times in his Second Amended Complaint and, in each cause of action, he complains of The Times's alleged failure to pay adequate heed to his writings, *see* Compl. ¶¶ 57, 124, 142, 156, 178. The Southern Poverty Law Center ("SPLC") entry on "Peter Brimelow," linked to by one of the articles at issue and cited in the Complaint, Compl. ¶ 68, and its entry on "VDARE," linked to in another article, also are incorporated by reference. The Court also may "take judicial notice of the *fact*" of a publication, "without regard to the truth of their contents." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008). The Times relies on *Alien Nation*, posts on VDARE, and other national publications for the undisputed fact that they were published, rather than for the truth of their contents.

122. He worries that "public policy now discriminates against" his son, Alexander—"a white male with blue eyes and blond hair." *Id.* at 11.

Reviews of *Alien Nation*, republished on VDARE, connect Brimelow's anti-immigration views to ethnic nationalism. One review faults Brimelow for viewing American identity through the prism of race—as is characteristic of ethnic nationalists—rather than through the prism of culture, politics, and economics—as civic nationalists do. "In the end, [Brimelow] explains the content of American national identity in old-fashioned, blood- and-soil racial terms: it is the culture of white (i.e., European-origin) Americans. . . . Brimelow for some reason insists on describing in racial and ethnic terms a national identity that can only be properly characterized in cultural terms." Francis Fukuyama, *Alien Nation Review: Culture Vulture*, VDARE (May 1, 1995) (originally published in the National Review), https://tinyurl.com/y8lxxmqj. Another review, also posted on VDARE, concludes "Mr. Brimelow seeks to replace this American tradition [of accepting immigrants] with an ethnic nationalism . . . ." Reed Ueda, *Alien Nation Review: Natterings of a Neo-Nativist*, VDARE (Apr. 18, 1995) (originally published in the Wall Street Journal), https://tinyurl.com/y8fsswxh. And a third reviewer is perhaps most emphatic, concluding Brimelow "sets forth what looks very much like a defense of old-fashioned white racial nationalism." Michael Lind, *Alien Nation Review: American By Invitation*, VDARE (Apr. 24, 1995), https://tinyurl.com/y9pvlfj8 (originally published in The New Yorker).

## B. VDARE: "My head is with racial nationalism"

Brimelow is the founder and editor of VDARE. Compl. ¶ 11. While Brimelow is often identified with the site, it is not a personal platform but is instead a site operated by a duly incorporated nonprofit foundation, according to its own statements. *See, e.g.*, Compl. ¶ 177 (asserting VDARE's 501(c)(3) status); VDARE, https://vdare.com/donate (providing VDARE Foundation's federal tax information). VDARE provides a platform for those "critical of

America's post-1965 immigration policies,"[3] Compl. ¶ 11, and is particularly concerned with

what it terms the "National Question"—that is, "how long the US can continue as a coherent

nation-state in the face of current immigration policy." VDARE, https://vdare.com/about.

VDARE's founding principles include that "***Demography is destiny:*** Human differences are not

social constructs. It is only with an honest consideration of race and ethnicity, the foundations of

human grouping, that human differences can be explained," and "***The racial and cultural***

***identity of America is legitimate and defensible:*** Diversity per se is not strength, but a

vulnerability." *Id.* (emphasis in original).

VDARE routinely publishes articles by individuals whom Brimelow identifies as "white

nationalists," a term he has defined to mean "people aiming to defend the interests of American

whites." *See* Peter Brimelow, *What's 'White Nationalist' about Official English anyway?*,

VDARE (June 23, 2009), https://tinyurl.com/ybwy3owp; Peter Brimelow, *Brimelow Remembers*

*Tanton: "A Citizen Who Took Up Arms For His Country,"* VDARE (Dec. 26,

2019), https://tinyurl.com/ydda8668 [hereinafter *Brimelow Remembers Tanton*] (defining white

nationalists as "people aiming to defend the interests of American whites—as they are absolutely

entitled to do"). For example, VDARE has published more than 80 posts by "Jared Taylor,

whom [Brimelow] would regard as 'white nationalist'. . . ." Peter Brimelow, *Is VDARE. COM*

*"White Nationalist"?*, VDARE (July 24, 2006), https://tinyurl.com/y8484l7c. VDARE also

published more than 420 posts by Sam Francis before his death in 2005. In his obituary,

Brimelow wrote that Francis was "a type of white nationalist, defending the interests of the

---

[3] The Immigration and Nationality Act of 1965, 8 U.S.C. §§ 1101 *et seq.*, abolished an earlier
1924 quota system based on national origin that prioritized immigration from Northern Europe
and prohibited all immigration from Asia, to "preserve the ideal of U.S. homogeneity." *See* U.S.
Department of State Office of the Historian, *The Immigration Act of 1924 (The Johnson-Reed
Act)*, https://tinyurl.com/qe2tnuw; David A. Reed, *America of the Melting Pot Comes to an End*,
N.Y. Times (Apr. 27, 1924), https://tinyurl.com/yb8sxh4s.

community upon which the historic United States was, as a matter of fact, built" and that this position "of course, is as legitimate as . . . Zionism" and "is, indeed, the inevitable result of multiculturalism that is being imported through public policy." Peter Brimelow, *In Memoriam Sam Francis (April 29, 1947 – February 15, 2005)*, VDARE (Feb. 16, 2005), https://tinyurl.com/ycng54em.

In the Complaint, Brimelow denies that he is a white nationalist and instead characterizes himself as a "civic nationalist." Compl. ¶ 60. Previously, however, on VDARE, Brimelow conceded that "my heart is with civic nationalism, but my head is with racial nationalism." James Fulford, *SLATE's Osita Nwanevu Interviews Peter Brimelow At CPAC*, VDARE (Feb. 24, 2018), https://tinyurl.com/yc339hwk. Brimelow has repeatedly defended white nationalism as an ideology. He has explained that "I do think that whites have common interests they can legitimately defend" and "I do think white nationalism in the sense of representing white interests is a legitimate position," Peter Brimelow, *INSIDER'S Nicole Einbinder interviews VDARE.com's Peter Brimelow: "'White Supremacist' Is The Equivalent of Me Calling You a Communist"*, VDARE (Apr. 4, 2019), https://tinyurl.com/y6v9a9dz [hereinafer *Einbinder Interview*]; *see also Brimelow Remembers Tanton* (eulogizing the prominent white nationalist, John Tanton, as "a gentleman" and "an environmentalist."). Brimelow has criticized the SPLC for "continu[ing] to use 'white nationalist' as a debate-killing pejorative" when in fact, Brimelow maintains, "white nationalism as a movement to defend the interests of American whites is as natural as Hispanic nationalism and Zionism - and inevitable as whites move into a minority. Get used to it, SPLC." Peter Brimelow, *John Tanton vs. SPLC: Let's See Some Treason Lobby Letters*, VDARE (Sept. 21, 2008), https://tinyurl.com/y9eys29y.

Brimelow has promoted theories at the heart of white nationalism and white supremacy, including that certain races are predisposed to commit crime and that IQ is linked to race. *See, e.g.*, James Fulford, *Yes, Virginia (DARE), There IS Hispanic 'Ethnic Specialization' In Child Rape. The Totalitarian Left Just Doesn't Want You To Know*, VDARE (Mar. 18, 2019), https://tinyurl.com/yd4leszu (Brimelow video at 51:46) ("[C]rime in this country is ethnically variegated. There's ethnic specialization in crime. And Hispanics do specialize in rape, particularly of children. They're very prone to it, compared to other groups."); Peter Brimelow, *"This Isn't A Free Country": The Heritage Foundation And The Fate Of Jason Richwine*, VDARE (May 11, 2013), https://tinyurl.com/y7mrcyah (asserting "[t]he facts about the differing average IQ levels of the various post-1965 immigrant streams have been settled science for many years" and research "can't be debunked" that Jews, East Asians and White Americans have higher IQs than Hispanic and Black Americans); *see also* Compl. ¶ 71 (acknowledging that Brimelow publishes articles "on the science of racial differences"). He has asserted that non-European immigrants cannot "assimilat[e]" into American culture and advocated not just restricting non-white immigration but that "[t]he ultimate answer must be: expulsion" of ethnic and religious minority immigrants. Peter Brimelow, *San Bernardino: The Answer Is An Immigration Moratorium—And Muslim Expulsion*, VDARE (Dec. 4, 2015), https://tinyurl.com/yb5vae3m.

On VDARE, Brimelow has dismissed the label "white nationalist" as just the "smear *du jour*" of "Woke Trump-Deranged Leftism," used indiscriminately by those on the political left to describe those on the right. *Brimelow Remembers Tanton*. "[W]hite supremacy" and "white nationalism," Brimelow argues, "are simply terms of abuse the Left uses to suppress rational criticism of immigration policy, and to intimidate the GOP from appealing to its own base."

*Einbinder Interview*. Dubbing someone on the right a "white nationalist," Brimelow says, "[i]s the equivalent of me calling Beto O'Rourke (or you) a Communist." *Id.* And, in response to accusations against him, Brimelow has maintained "even if I were [ ] a White Nationalist, so what?" Peter Brimelow, *Blumenthal vs. Brimelow, Again*, VDARE (Feb. 26, 2006), https://tinyurl.com/yajlc6ws.

## II.     THE ARTICLES

Brimelow sues over five separate articles, but the primary gist of his complaint is that he was portrayed as a white nationalist or white supremacist and an anti-Semite.[4]

### A.     The January Article

On January 15, 2019, The Times published an article (the "January Article") about Iowa Congressman Steve King and his history of offensive comments. Compl. ¶ 48; Trip Gabriel, *A Timeline of Steve King's Racist Remarks and Divisive Actions*, N.Y. Times (Jan. 15, 2019), McCraw Decl. Ex. A. The article included a bullet-point timeline of examples. *Id*. One bullet point stated that, in 2012, "On a panel at the Conservative Political Action Conference with Peter Brimelow, an open white nationalist, Mr. King referred to multiculturalism as: 'A tool for the Left to subdivide a culture and civilization into our own little ethnic enclaves and pit us against each other.'" Compl. ¶ 52. The article later was revised to say:

---

[4] For the convenience of the Court, The Times submits copies of the articles referenced in the Complaint, some of which are located behind paywalls. *See* Declaration of David E. McCraw ("McCraw Decl.").

> **2012**
>
> On a panel at the Conservative Political Action Conference with Peter Brimelow, a white nationalist, Mr. King referred to multiculturalism as:
>
> A tool for the Left to subdivide a culture and civilization into our own little ethnic enclaves and pit us against each other.

Compl. ¶ 63. The underlined words hyperlink to the SPLC website. Compl. ¶ 68. The SPLC website categorizes Brimelow's ideology as "white nationalist" and includes examples of Brimelow's public statements. *Id.*; SPLC, *Peter Brimelow*, htttps://www.splcenter.org/fighting-hate/extremist-files/individual/peter-brimelow. Brimelow asserts that he is not a white nationalist and the article harmed his reputation by accusing him "of being a figure of division and racism" and by linking to the SPLC website. Compl. ¶¶ 51, 57, 68–75.

### B. The August Article

In August 2019, a controversy erupted among immigration judges when the Department of Justice Executive Office for Immigration Review ("EOIR") included in its daily briefing a VDARE blog post. *See* Compl. ¶¶ 108–10; Christine Hauser, *Justice Department Newsletter Included Extremist Blog Post*, N.Y. Times (Aug. 23, 2019), McCraw Decl. Ex. B (the "August Article"). The union representing immigration judges submitted a complaint to the EOIR, protesting that the post "directly attacks sitting Immigration Judges with racial and ethnically tinged slurs." Compl. ¶ 110(a). The Times reported on the controversy, including the union's complaint, EOIR's response, VDARE's denial, and the history of the disputed term, "kritarch." *Id*. ¶ 110. The article does not reference Brimelow. *Id.* Brimelow asserts it was false and defamatory of him to quote officials and other third parties stating that VDARE is "an anti-immigration hate website," a "white nationalist website" and "racist." *Id.* Brimelow's complaint

is not clear, but he apparently believes that language implied that VDARE had published an anti-Semitic article, an implication that he in turn claims personally defamed him. *See* Compl. ¶ 111.

### C.     The September Article

A month later, The Times published a story about the departure of senior EOIR officials. *See* Compl. ¶¶ 133–34; Katie Benner, *Top Immigration Judge Departs Amid Broader Discontent Over Trump Policies*, N.Y. Times (Sept. 13, 2019), McCraw Decl. Ex C (the "September Article"). The article details conflict between immigration judges and the Trump administration. It closes by briefly noting that: "Last month, tensions increased when a daily briefing that is distributed to federal immigration judges contained a link to a blog post that included an anti-Semitic reference and came from a website that regularly publishes white nationalists." Compl. ¶ 135. The underlined text hyperlinks to the August Article. The September Article does not reference Brimelow and does not name VDARE. Brimelow alleges it personally defamed him to say that a blog post on VDARE used an anti-Semitic reference. *Id.* ¶¶ 138–40. He apparently does not dispute that VDARE "regularly publishes white nationalists." *Id.* ¶¶ 132–49.

### D.     The November Article

On November 18, 2019, The Times published an article about Stephen Miller, a close adviser to President Trump who has been instrumental in driving changes to immigration policy. *See* Compl. ¶ 151; Katie Rogers & Jason DeParle, *The White Nationalist Websites Cited by Stephen Miller*, N.Y. Times (Nov. 18, 2019), McCraw Decl. Ex. D (the "November Article"). The article reports on leaked emails showing Miller "he has maintained deeper intellectual ties to the world of white nationalism than previously known." McCraw Decl. Ex. D. The article includes examples of Miller's terminology, theories, and source citations. *Id.* It quotes experts opining on their significance and links to white nationalism. *Id.* Among the examples given is that Miller cited "Peter Brimelow, the founder of the anti-immigration website VDARE, [who]

10

believes that diversity has weakened the United States, and that the increase in Spanish speakers is a 'ferocious attack on the living standards of the American working class.'" *Id.* The underlined text hyperlinks to reporting and a video, in which Brimelow made those statements. *See* Sofia Resnick, *VIDEO: Peter Brimelow attacks multiculturalism at CPAC*, Colo. Indep. (Feb. 9, 2012), https://tinyurl.com/ybtv3aft.

The November Article reports that SPLC "has labeled VDARE a 'hate website' for its ties to white nationalists and publication of race-based science . . . .'" McCraw Decl. Ex. D. The underlined text hyperlinks to SPLC's web page on VDARE. *See* SPLC, *VDARE*, https://www.splcenter.org/fighting-hate/extremist-files/group/vdare. The article explains that VDARE "approvingly cite[s] Calvin Coolidge's support for a 1924 law that excluded immigrants from southern and Eastern Europe, and praise[s] 'The Camp of the Saints,' a 1973 French novel that popularizes the idea that Western civilization will fall at the hands of immigrants." McCraw Decl. Ex. D. The article quotes experts explaining why those statements are indicative of white nationalist beliefs. *Id.* The article also includes contrary opinions, refuting the connection. *Id.* Brimelow asserts that the statements about him and VDARE were false and defamed him.

### E.   The Reuters Article

On May 5, 2020, The Times published a wire article from Reuters. *See* Compl. ¶ 170; McCraw Decl. Ex. E.[5] The article reports that Facebook said it had identified and removed several networks of fake social media accounts, including ones linked to Iran, QAnon, "and a separate U. S.-based campaign with ties to white supremacist websites VDARE and the Unz

---

[5] The Complaint does not include a copy of the article, which, like similar articles from Reuters, is not maintained on The Times website after a short period of time. McCraw Decl. ¶ 6. The article remains on the Reuters website. *See* Jack Stubbs & Katie Paul, *Facebook Says It Dismantles Disinformation Network Tied to Iran's State Media*, Reuters (May 5, 2020), https://tinyurl.com/y7om4kc7; McCraw Decl. Ex. F.

Review." Compl. ¶ 171; McCraw Decl Ex. E. The article reports that Facebook said the networks recently had been pushing coronavirus-related disinformation. *Id.* The article does not mention Brimelow. *Id.* Nevertheless, Brimelow asserts that the article, because of its reference to VDARE, accuses him personally of "race hatred." Compl. ¶ 175. He also raises a second theory—that the article accuses him of "manipulating on-line readers by utilizing a 'bot-farm' of fake accounts" and engaging in actions that violated VDARE's "501(c)(3) status." *Id.* ¶ 176–77.

## III.   THE COMPLAINT

On January 9, 2020, Brimelow filed this action against The Times, asserting defamation. ECF No. 1. On April 23, 2020, Brimelow amended the Complaint to add additional claims for defamation. ECF No. 16. On May 26, Brimelow amended the Complaint for a second time, to add a fifth cause of action, arising out of the Reuters Article. Compl. ¶¶ 164–85. Brimelow seeks five million dollars in actual damages, punitive damages, and costs. *Id.* at 41.

## <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 570 (2007)) (internal marks omitted). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation and citation omitted).[6] The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully" and may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

---

[6] The Times accepts the truth of Plaintiff's well-pleaded allegations solely for the purposes of this Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 679.

The Second Circuit specifically has held that the pleading standard adopted in *Iqbal* and *Twombly* applies in defamation actions. *Biro v. Condé Nast*, 807 F.3d 541, 545 (2d Cir. 2015). In fact, the *Iqbal/Twombly* standard "has a 'particular value' in this context," because "forcing defamation defendants to incur unnecessary costs can chill the exercise of constitutionally protected freedoms." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) (internal marks and citation omitted). "In other words, in defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Id.*

## ARGUMENT

### I. TERMS LIKE "WHITE NATIONALIST," "WHITE SUPREMACIST," OR "ANTI-SEMITIC" ARE STATEMENTS OF OPINION

All of Brimelow's claims but one (the claim referencing "bot-farms" from the Reuters Article) are premised on characterizations of him or VDARE as "white nationalist," "white supremacist," or "anti-Semitic." Brimelow disagrees with these characterizations. But a federal court is not the place to resolve disagreements about etymology and ideology. The statements Brimelow objects to are clearly opinions, entitled to robust protection by the First Amendment and New York law, and his efforts to use a lawsuit to chill criticism of his controversial views should be rejected by this Court.

#### A. Statements of Opinion Are Given Broad Protection Under New York Law

It is well settled that expressions of opinion are not actionable as defamation. *See, e.g.*, *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–20 (1990). Indeed, the New York Court of Appeals, in an effort to "provide a hospitable climate for the free exchange of ideas," *Weinstein v. Friedman*, 1996 U. S. Dist. LEXIS 3672, at *57 (S.D.N.Y. Mar. 26, 1996) (quotation and citation omitted), affords statements of opinion a level of protection beyond that afforded by the

First Amendment under federal law. *See, e.g.*, *Gross v. N.Y. Times*, 82 N.Y.2d 146, 152 (1993) (noting that New York's test for "non-actionable opinion" is "decidedly more protective" than the First Amendment); *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 249 (1991); *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 (2d Cir. 2013) ("New York law is, if anything, more protective of free speech interests and less expansive in permitting causes of action based on speech, than federal law"). "[F]alse or not, libelous or not," expressions of opinion "are constitutionally protected and may not be the subject of private damage actions." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (1986) (citation and quotation omitted).

Whether a particular statement constitutes an opinion is a question of law, appropriately decided on a motion to dismiss. *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008). In evaluating whether a statement is protected opinion, courts look to four factors: (1) "whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous"; (2) "whether the statement is capable of being objectively characterized as true or false"; (3) "the full context of the communication in which the statement appears"; and (4) "the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Celle v. Filipino Reporer Enters.*, 209 F. 3d 163, 178–79 (2d Cir. 2000) (quoting *Steinhilber*, 68 N.Y.2d at 292). This is not "a rigid set of criteria which can be universally applied. The infinite variety of meanings conveyed by words . . . rules out . . . a formulistic approach." *Steinhilber*, 68 N.Y.2d at 291.

That a statement of opinion appears as part of a news story does not strip it of protection. Numerous New York state cases have found that opinion contained in ordinary news articles was protected. For example, in *Silverman v. Daily News, L.P.*, the Appellate Division affirmed the

14

dismissal of a libel suit brought by the former principal at a Bronx Catholic school against the Daily News over a reported news article. 129 A.D.3d 1054 (2d Dep't 2015), *appeal dismissed* 26 N.Y.3d 962 (2015). Similarly, a state Supreme Court judge dismissed a libel suit brought against the New York Post, holding that the statements at issue—from a news article reporting on a controversy surrounding the scheduling of athletic games—were non-actionable opinion. *Morgan v. NYP Holdings, Inc.*, 2017 N.Y. Misc. LEXIS 5035, at *16–23 (Sup. Ct. Kings Cty. Dec. 15, 2017).

### B.     Labels Like "White Nationalist" and "White Supremacist" Are Not Susceptible to Being Proved True or False

The critical factor in determining in whether a statement is fact or opinion is whether it is susceptible to being proved true or false. *Gross*, 82 N.Y.2d at 152 ("The dispositive inquiry, under either Federal or New York law, is whether a reasonable reader could have concluded that the articles were conveying facts about the plaintiff." (quotation and citation omitted)). Like the term "fascist," whose meaning the Second Circuit held is so "loose and varying" as to be incapable of being proven true or false, *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976), the labels "white nationalist" or "white supremacist" are similarly loosely defined and loosely applied. Unlike accusations that someone committed a specific crime, defined by statute, *see, e.g., Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 65 (2d Cir. 1980), there is no authoritative definition of these terms. Depending on the speaker's point of view, the labels can encompass a broad array of ideologies, and reflect a judgment about "the place of a given commentator" on "a spectrum" of thought from Stalinism to Nazism. *Buckley*, 539 F.2d at 893. "[C]oncepts whose content is so debatable . . . that they are insusceptible to proof of truth or falsity" fall "within the realm of protected opinion and idea." *Id.* at 894. "The Court could not instruct the jury on how to

evaluate the truth of a charge of [white supremacy] without entering an age old debate better left to philosophers." *Held v. Pokorny*, 583 F. Supp. 1038, 1040 (S.D.N.Y. 1984).

In light of the imprecision of these terms, and consistent with the First Amendment "imperatives of 'uninhibited, robust, and wide-open' debate," *Buckley*, 539 F.2d at 888 n.3, courts in New York and elsewhere have repeatedly found terms like "racist" or "white nationalist" to be non-actionable opinion. *See, e.g.*, *Russell v. Davies*, 97 A.D.3d 649, 650–51 (2d Dep't 2012) (a reasonable reader of news reports describing plaintiff's essay as "racist and anti-Semitic" "would have concluded that he or she was reading and/or listening to opinions"); *Ratajack v. Brewster Fire Dep't Inc.*, 178 F. Supp. 3d 118, 165–66 (S.D.N.Y. 2016) (holding that claims that plaintiff was a "racist" were nonactionable opinion); *Carto v. Buckley*, 649 F. Supp. 502, 508–09 (S.D.N.Y. 1986) (holding that the phrase "racial and religious bigotry" is non-actionable opinion); *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) (finding the term "racist" not actionable). Perhaps most relevant, in 2012, a former school principal sued the Daily News over a series of articles using essentially the same terms at issue here. Specifically, the articles referred to him in a headline as a "White supremacist principal," and stated that he had "ties to a white supremacist group," had authored "racist writings," and had contributed to "the white supremacist publication American Renaissance." *Borzellieri v. Daily News, LP*, 39 Misc. 3d 1215(A), at *1 (N.Y. Sup. Ct., Apr. 22, 2013). Both the Supreme Court and the Appellate Division readily concluded that those characterizations were protected opinion. *See id.*, *aff'd sub nom. Silverman*, 129 A.D.3d at 1055, *appeal dismissed* 26 N.Y.3d 962 (2015). *See also, e.g.*, *Jorjani v. N.J. Inst. of Tech.*, 2019 U.S. Dist. LEXIS 39026, at *19–20 (D.N.J. Mar. 11, 2019) (dismissing a libel claim based on characterizations of the plaintiff as a "white supremacist" who

was "full of racism," on the ground that such "insults, epithets, name-calling, and other forms of verbal abuse, although offensive, are not defamatory").

Brimelow himself has repeatedly asserted that the term "white nationalist" is used as a hyperbolic expression of disagreement with a person's views on race and immigration, rather than to convey any definite or precise meaning. He has described the phrase "white nationalism" as a "term[] of abuse [used by] the Left" to convey disagreement with certain views on immigration policy. *Einbinder Interview*. And he has claimed that the use of the term "white supremacist" to describe him was just an example of "overwrought language." Peter Brimelow & Jared Taylor, *"A Public/Private Initiative to Curtail Debate"--The Op-Ed The NYT Wouldn't Run*, VDARE (Sept. 9, 2017), https://tinyurl.com/yda4yspf.

Further, the context of The Times articles at issue indicates to the reader that he or she will encounter statements of opinion. For example, the headline, "A Timeline of Steve King's Racist Remarks and Divisive Actions," Compl. ¶ 48, reveals that the article will reflect the author's subjective determination of what is "racist" and "divisive"—terms open to interpretation (as is the phrase in the subhead, "denigrating racial minorities"). Similarly, the article "The White Nationalist Websites Cited by Stephen Miller," Compl. ¶ 151—which describes Miller as "endors[ing]," "prais[ing]," or writing "approvingly" of certain views and contends that Miller "has maintained deeper intellectual ties to the world of white nationalism than previously known"—similarly employs subjective characterizations. All of the relevant factors therefore indicate that the epithets "white nationalist" and "white supremacist," as used in the articles at issue, are protected opinion. *See Celle*, 209 F.3d at 178–79.

### C.    Characterizing Speech As "Anti-Semitic" Is Non-Actionable Opinion

Like the epithets "white nationalist" and "white supremacist," the characterization of writings on VDARE as "anti-Semitic" also is non-actionable opinion. In the articles at issue, the

context makes plain that the authors are offering or reporting on others' subjective characterizations. The August Article quotes immigration judge Ashley Tabaddor stating that "VDare's use of the term [kritarchy] in a pejorative manner casts Jewish history in a negative light as an anti-Semitic trope of Jews seeking power and control." *See* Compl. ¶ 110(e). In doing so, it conveys Judge Tabaddor's subjective views about the significance of the word kritarchy as used on VDARE. The article also includes opposing views, emphasizing to readers the subjective nature of the critique. Similarly, the September Article "Top Immigration Judge Departs Amid Broader Discontent Over Trump Policies," which links to the reporting in the prior article, conveys the fact that at least some people, including Tabaddor, interpreted the reference to be anti-Semitic, prompting "tensions" and the immigration office's decision to "stop sending the daily briefing." Compl. ¶ 135.

The characterization of the VDARE post as "extremist" and "anti-Semitic" also is non-actionable because it is an opinion based on disclosed facts. The August Article explains the basis for the critique, including: the controversial use of the word "kritarch," the EOIR's official statement that it "strongly condemns anti-Semitism and white nationalism," and the fact that the VDARE post also "used the word Lügenpresse, which was used by the Nazis." Accordingly, no defamation claim lies for the use of the phrase "anti-Semitic" in connection with the VDARE blog post. *See, e.g.*, *Morgan*, 58 Misc. 3d 1203[A], at *5–7 (dismissing a defamation claim over an article that had described plaintiff as acting "like a Nazi" and holding that "any implication that plaintiff is anti-Semitic constitutes a non-actionable opinion"); *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012) (finding that the challenged statements referring to plaintiff as anti-Semitic were non-actionable opinion and noting that "the reasonable reader

18

would understand any implication that [the plaintiff] himself is anti-Semitic and/or anti-

American to be the opinion of a person 'voicing no more than a highly partisan point of view'").

## II.     STATEMENTS REGARDING THE WEBSITE VDARE.COM ARE NOT "OF AND CONCERNING" PLAINTIFF AS A MATTER OF LAW

Many of Brimelow's claims also fail for a second and independent reason: The

challenged statements are not even about him. He cannot bootstrap criticism of VDARE into a

personal libel claim. The "of and concerning" requirement "stands as a significant limitation on

the universe of those who may seek a legal remedy for communications they think to be false

and defamatory." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399 (2d Cir. 2006). To make this

showing, Brimelow must plead and prove that the statements at issue actually referred to him and

that a person hearing or reading the statement reasonably could have interpreted it as such. *Three*

*Amigos SJL Res., Inc. v. CBS News Inc.*, 28 N.Y.3d 82 (2016). "This burden is not a light one,

and the question of whether an allegedly defamatory statement could reasonably be interpreted to

be 'of and concerning' a particular plaintiff is a question of law for the courts to decide." *Id.* at

86–87.

Three of the five articles do not mention Brimelow at all. *See* August Article; September

Article; Reuters Article. In an effort to meet the "of and concerning" requirement for these

claims, Brimelow argues that he has "come to be known synonymously with VDARE to the

public at large" and "is the face of VDARE," and therefore any reference to VDARE should be

deemed a reference to him. *See, e.g.*, Compl. ¶¶ 112–22. But it is well established that

defamatory words directed at a corporation or organization do not give rise to a claim by the

individuals associated with it. *See, e.g.*, *Three Amigos*, 28 N.Y.3d at 87 (allegations that a strip

club was a mafia enterprise were not "of and concerning" individuals associated with the club);

*Gilman v. Spitzer*, 538 F. App'x 45, 47 (2d Cir. 2013) (summary order) (allegations of extensive

19

illegal activity by company were not "of and concerning" senior executive); *Cardone v. Empire Blue Cross & Blue Shield*, 884 F. Supp. 838, 847–48 (S.D.N.Y. 1995) (statements defamatory of company are not "of and concerning" its CEO); *Fulani v. N.Y. Times Co.*, 260 A.D.2d 215, 216 (1st Dep't 1999) (statement defaming political group not "of and concerning" its coordinator). Many organizations are closely associated with their founders or leaders. But defamatory allegations about, for example, Facebook do not give rise to a *personal* right of action by Mark Zuckerberg, even though Mr. Zuckerberg founded and continues to exercise significant control over the direction of the website. Similarly, statements about VDARE are not reasonably "of and concerning" Brimelow, individually.

Some of the statements at issue are even more tenuously connected to Brimelow. None of the articles, for example, call VDARE or Brimelow anti-Semitic. Rather, The Times reported that some immigration judges thought that a blog post that was published on VDARE used anti-Semitic language. *See* September Article; November Article. Even if that accusation could be understood as factual and false, the assertion that the post was anti-Semitic is not defamatory of Brimelow, personally.

Then there is Brimelow's second objection to the Reuters Article—that it accuses him of running a "bot-farm" of fake accounts and engaging in activities inconsistent with VDARE's nonprofit status. *See* Compl. ¶ 171. The claim is frivolous. The Reuters Article states that Facebook removed "a U.S. network of fake accounts linked to QAnon . . . and a separate U.S.-based campaign with ties to white supremacist websites VDARE and Unz Review." There is no reference to a "bot-farm" at all and no reference to "fake accounts" in connection with VDARE. The separate U.S.-based campaign is identified only as having unspecified "ties" to both VDARE and the Unz Review, according to Facebook. The article does not assert that VDARE—

much less Brimelow—controlled the campaign.[7] And nothing in the Reuters Article describes

activities that would violate an organization's nonprofit status.

## III.    HYPERLINKING TO A WEBSITE DOES NOT GIVE RISE TO A DEFAMATION CLAIM

Brimelow also asserts that it was defamatory for The Times to hyperlink to the SPLC

website, apparently on the theory that the hyperlink constituted an endorsement or incorporation

of all the contents of the SPLC website. Compl. ¶¶ 74–75, 83, 87. That is simply not the law.

Hyperlinking to a website does not "publish" the contents of the website, as a matter of law, and

"publication" is a basic element of any defamation claim. *See, e.g.*, *Mirage Entm't, Inc. v. FEG*

*Entretenimientos S.A.*, 326 F. Supp. 3d 26, 39 (S.D.N.Y. 2018) (rejecting the theory that a tweet

by Mariah Carey was defamatory because it hyperlinked to a purportedly defamatory website);

*In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012) ("[A] mere reference to an

article, regardless how favorable it is as long as it does not restate the defamatory material, does

not republish the material." (collecting cases)).[8] The Times is not liable for the contents of the

SPLC website, simply because it hyperlinked to the site.

---

[7] Claims based on the Reuters Article also should be dismissed for two additional and independent reasons: the wire defense doctrine and Section 230 of the Communications Decency Act. "The wire serve defense is available where . . . a news organization reproduces an apparently accurate article by a reputable publisher, without substantial change and without actual knowledge of its falsity." *Winn v. Associated Press*, 903 F. Supp. 575, 579 (S.D.N.Y. 1995), *aff'd*, 104 F.3d 350 (table) (2d Cir. 1996). Here, The Times republished, verbatim, an article from Reuters, the classic example of a reputable wire service. *Compare* McCraw Decl. Ex. E *with* McCraw Decl. Ex. F. Section 230 also shields online service providers from liability for content provided by others. *See, e.g.*, *Gibson v. Craigslist, Inc.*, 2009 U.S. Dist. LEXIS 53246, at *9–10 (S.D.N.Y. June 15, 2009) (granting a 12(b)(6) motion to dismiss based on Section 230 immunity). Here, the article was published only online, Compl. ¶ 170, and Reuters provided all content.

[8] Courts also have found that merely hyperlinking to an allegedly defamatory website is shielded from liability by Section 230 of the Communications Decency Act. *See, e.g.*, *Vazquez v. Buhl*, 150 Conn. App. 117 (Conn. App. Ct. 2013).

IV.   **THE COMPLAINT SHOULD BE DISMISSED BECAUSE BRIMELOW HAS NOT PLAUSIBLY ALLEGED THAT THE TIMES ACTED WITH ACTUAL MALICE**

Brimelow, who acknowledges he is a public figure (Compl. ¶¶ 6–7, 11, 100), must plead and prove actual malice. *See N.Y. Times v. Sullivan*, 376 U.S. 254, 279–80 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 728, 731 (1968). When a plaintiff fails to plausibly allege that the publisher acted with reckless disregard for the truth, courts properly protect First Amendment freedoms by dismissing the case at the pleading stage. *See, e.g.*, *Biro*, 807 F.3d at 546; *Cabello-Rondon v. Dow Jones & Co.*, 720 F. App'x 87, 89 (2d Cir. 2018). Here, Brimelow's burden is enormous. He must allege that The Times knew he did not openly hold white nationalist or white supremacist views but published those characterizations anyway. That is beyond implausible in light of his own proclaimed views. *See Iqbal*, 556 U.S. at 678.

 "Actual malice" means that a publisher acted with knowledge that statements were false, or despite a "high degree of awareness" of their "probable falsity." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). Brimelow must establish by "clear and convincing evidence that the Times published the article[s] with actual malice." *Contemporary Mission v. The New York Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988). This "heavy burden of proof," *id.*, serves our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," even though such debate "may well include vehement, caustic, and sometimes unpleasantly sharp"—and even "erroneous"—commentary about public figures. *Sullivan*, 376 U.S. at 270–71.

Brimelow tries to save his case by advancing a number of theories of actual malice. None are viable. First, Brimelow argues that The Times "breached [its] own ethics and standards" and deviated from "accepted newsgathering standards" in various ways, such as by failing to seek comment from him and failing to link to the VDARE website. Compl. ¶¶ 57–58, 62, 124–26,

142–43, 156–57, 178–79. But it is well established that deviating from journalistic standards does not constitute actual malice. *See, e.g.*, *Harte-Hanks*, 491 U.S. at 665 ("[A] public figure plaintiff must prove more than an extreme departure from professional standards" to demonstrate actual malice); *Biro*, 963 F. Supp. 2d at 285 ("failure to investigate is not evidence of actual malice"); *id.* at 286 (failure to follow standards "even where it violates the paper's practices as set forth in its employee handbook" does not establish actual malice) (citation omitted).

Second, Brimelow argues that The Times knowingly relied on "a highly questionable source with a reputation for persistent inaccuracies, namely the SPLC." *See* Compl. ¶ 57(d); *see also id.* ¶¶ 38–47, 124(d), 143(d), 156(d). But the actual malice analysis focuses not on the objective quality of sources but on the subjective state of mind of the publisher. *See, e.g.*, *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 126 (2d Cir. 2013). Moreover, Brimelow does not refute any of the *facts* reported on the SPLC website: he does not deny that he made all of the statements attributed there to him. Brimelow's lengthy criticisms of the SPLC as an organization are simply irrelevant. Brimelow cannot plausibly show that there were obvious reasons to doubt the SPLC's conclusions about him when his own quoted statements provided ample support for the assertion that he openly espouses white nationalism.

Third, Brimelow argues that The Times knew or should have known that he was not a white nationalist because he told The Times he was, in fact, a "civic nationalist." *Id.* ¶¶ 57(f), 59–61. As is often the case in life, saying something does not make it so. The Times remained free to come to its own conclusion about how to characterize Brimelow's view.

Fourth, Brimelow argues that The Times had "preconceived hostility toward Plaintiff as an ideological opponent." *See* Compl. ¶¶ 57(e), 124(g), 142(f), 156(f), 178(f). Brimelow pleads no facts in support of this allegation. Such conclusory allegations are insufficient to meet the

23

*Iqbal/Twombly* standard. And, equally importantly, ill will, alone, does not establish actual

malice. *See Celle*, 209 F.3d at 183.

In the end, by the time that The Times wrote about him, Brimelow's reputation as a white

nationalist and white supremacist was firmly established as a result of the things he said. A

simple Google search turns up numerous national news organizations, over many years, making

the same assertions about him and about VDARE.[9] Even extremely conservative commentators

have characterized Brimelow and VDARE as such. *See, e.g.*, Ben Shapiro, *Conservatives Oust*

*Bigotry, and the Left Only Slams Them For It*, National Review (Aug. 28, 2018),

https://tinyurl.com/y9sqeym7 ("[O]ther speakers included Peter Brimelow, creator of the white-

supremacist site VDare.com."). Similarly, news organizations reporting on the immigration

judges' complaint about VDARE almost universally referred to the post as "anti-Semitic."[10]

Brimelow is "libel-proof" with regard to these accusations. As the Second Circuit has

recognized, "a plaintiff's reputation with respect to a specific subject may be so badly tarnished

_____

[9] *See, e.g.*, Sam Thielman, *The fascist next door: how to cover hate*, Colum. Journalism Rev. (Aug. 14, 2019) https://www.cjr.org/tow_center/how-to-cover-hate.php ("Peter Brimelow . . . was an editor at the *Review*, now he publishes fellow white supremacists"); Emma Green, *The Nationalists Take Washington*, The Atlantic (July 17, 2019), https://tinyurl.com/ybf9dtzy ("Peter Brimelow, the editor of the white-supremacist website VDARE"); Jane Coaston, *Peter Brimelow and VDare, the white nationalist website with close ties to the right, explained*, Vox (Sept. 24, 2018), https://tinyurl.com/yce275bo ("Larry Kudlow invited a well-known white nationalist to his birthday party. . . . Peter Brimelow."); Dean Obeidallah, *Trump's Mainstreaming of "Chain Migration": A White Supremacist's Dream*, Daily Beast (Feb. 1, 2018), https://tinyurl.com/yc7qsjed ("Then there's Peter Brimelow, the other white nationalist . . ."); Brianna Ehley, *Trump: I don't want David Duke's endorsement*, Politico (Aug. 26, 2015), https://tinyurl.com/y88orc3e ("the white-nationalist website VDARE touted Trump"); Caitlin Dewey, *Amazon, PayPal and Spotify inadvertently fund white supremacists. Here's how.*, Wash. Post (Mar. 17, 2015) ("VDARE, a radical white nationalist site"), https://tinyurl.com/yb9pytky.
[10] *See, e.g.*, Reis Thebault, *Federal judges received a link to an anti-Semitic blog post. It came from the Justice Department.*, Wash. Post (Aug. 23, 2019), https://tinyurl.com/y2bvzel4; Elliot Hannon, *Justice Department Sent Immigration Judges Anti-Semitic Blog Post From White Nationalist Hate Group*, Slate (Aug. 23, 2019), https://tinyurl.com/y4nx7y5t; Caroline Kelly, *Immigration judges at DOJ were sent news briefing with link to anti-Semitic content*, CNN (Aug. 23, 2019), https://tinyurl.com/y2am6s6r.

that he cannot be further injured by allegedly false statements on that subject." *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986) (citation omitted). In *Guccione*, for example, plaintiff brought a claim for defamation based on accusations of adultery. But "widely circulated publications such as Newsweek, New York magazine, and the Washington Post" had, for years prior to the publications at issue, reported that he had had an extramarital affair. *Id.* at 304. The Second Circuit concluded that plaintiff already had a well-known reputation for adultery and additional reporting "could not further injure his reputation on the subject." *Id.* at 304. Given years of national reporting on Brimelow and VDARE, characterizing them as "white nationalist" or "white supremacist," that reasoning applies here with equal force.

## CONCLUSION

For all the reasons set forth above, Defendant respectfully requests that the Court dismiss the Complaint with prejudice and provide such other and further relief as the Court deems appropriate.

Dated: New York, NY
      June 18, 2020

Respectfully submitted,

/s/ David E. McCraw
David E. McCraw
Dana R. Green
Alexandra-Perloff Giles
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
Facsimile: (212) 556-4634
Email: mccraw@nytimes.com

*Attorneys for Defendant*