UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————X
                                        :
PETER BRIMELOW,                         :
                                        :
                        Plaintiff,      :
                                        :    20-cv-00222-KPF
        - against -                     :
                                        :
NEW YORK TIMES COMPANY,                 :
                                        :
                        Defendant.      :
————————————————————————————X

# REPLY MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

David E. McCraw
Dana R. Green
Alexandra Perloff-Giles
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-4634
mccraw@nytimes.com

*Attorneys for Defendant*

# **TABLE OF AUTHORITIES**

Cases

*Brian v. Richardson*,
　87 N.Y.2d 46 (1995) ................................................................................................ 4, 5

*Buckley v. Littell*,
　539 F.2d 882 (2d Cir. 1976) ......................................................................................... 2

*Cooper v. Town of E. Hampton*,
　888 F. Supp. 376 (E.D.N.Y. 1995) .............................................................................. 3

*Cortec Indus., Inc. v. Sum Holding L.P.*,
　949 F.2d 42 (2d Cir. 1991) ........................................................................................ 10

*Cummings v. City of N.Y.*,
　2020 U.S. Dist. LEXIS 31572 (S.D.N.Y. Feb. 24, 2020) ....................................... 2, 6

*Davis v. Boeheim*,
　24 N.Y.3d 262 (2014) .................................................................................................. 2

*Davis v. Costa-Gavras*,
　654 F. Supp. 653 (S.D.N.Y. 1987) ............................................................................ 10

*Elias v. Rolling Stone LLC*,
　872 F.3d 97 (2d Cir. 2017) .......................................................................................... 7

*Enigma Software Group USA v. Bleeping Computer LLC*,
　194 F. Supp. 3d 263 (S.D.N.Y. 2016) ......................................................................... 9

*Gilman v. Spitzer*,
　538 F. App'x 45 (2d Cir. 2013) ................................................................................... 7

*Greenbelt Cooperative Publ'g Assoc. v. Bresler*,
　398 U.S. 6 (1970) ........................................................................................................ 3

*Gross v. New York Times*,
　82 N.Y.2d 146 (1993) ......................................................................................... 1, 2, 6

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
　491 U.S. 657 (1989) .................................................................................................... 9

*Herlihy v. Metropolitan Museum of Art*,
　214 A.D.3d 250 (1st Dep't 1995) ................................................................................ 3

*Hotchner v. Castillo-Puche*,
　551 F.2d 910 (2d Cir. 1977) .................................................................................... 1, 2

*Immuno AG v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ................................................................................................... 6

*In re Phila. Newspapers, LLC*,
   690 F.3d 161 (3d Cir. 2012) ......................................................................................... 9

*Liberty Lobby, Inc. v. Anderson*,
   746 F.2d 1563 (D.C. Cir. 1984) ................................................................................... 2

*Mann v. Abel*,
   10 N.Y.3d 271 (2008) ................................................................................................... 2

*Morgan v. NYP Holdings, Inc.*,
   2017 N.Y. Misc. LEXIS 5035 (Sup. Ct. Kings Cty. Dec. 15, 2017) ....................... 5, 6

*Reuber v. Food Chem. News, Inc.*,
   925 F.2d 703 (4th Cir. 1991) .................................................................................... 6, 7

*Schermerhorn v. Rosenberg*,
   73 A.D.2d 276 (2d Dep't 1980) ................................................................................... 3

*Scott v. Cooper*,
   226 A.D.2d 360 (2d Dep't 1996) ................................................................................. 3

*Sheridan v. Carter*,
   48 A.D.3d 444 (2d Dep't 2008) ................................................................................ 3, 4

*Silverman v. Daily News, L.P.*,
   129 A. D. 3d 1054 (2d Dep't 2015) ........................................................................... 5, 6

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ................................................................................................... 10

*Steinhilber v. Alphonse*,
   68 N.Y.2d 283 (1986) ................................................................................................... 2

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
   28 N.Y.3d 82 (2016) ..................................................................................................... 7

*United States v. Gardner*,
   837 F. Supp. 2d 346 (S.D.N.Y. 2011) ......................................................................... 9

*Vazquez v. Buhl*,
   150 Conn. App. 117 (Conn. App. Ct. 2013) ............................................................... 9

   Statutes

N.Y. Civil Rights Law § 74 ................................................................................................ 7

Other Authorities

Frederick F. Schauer, *Language, Truth, and the First Amendment: An Essay in Memory of Harry Canter*, 64 Va. L. Rev. 263 (1978) .............................................................................. 4

Rules

Fed. R. Civ. P. 201 ................................................................................................................. 6

## **TABLE OF CONTENTS**

I.   PLAINTIFF MISREPRESENTS AND MISAPPLIES THE LAW ON OPINION ........... 1

    A.   The Allegedly Defamatory Statements Have No Precise Meaning and Cannot Be Proven True or False ................................................................................ 1

    B.   Context Is Not the Dispositive Factor and Courts Routinely Find That Statements in News Reports are Non-Actionable Opinion ..................................... 4

II.   ARTICLES REPORTING ON VDARE'S PUBLICATION OF THE WORD 'KRITARCH' ARE NOT ACTIONABLE ............................................................................. 6

III.  STATEMENTS REGARDING VDARE ARE NOT "OF AND CONCERNING" BRIMELOW .................................................................................................................... 7

IV.   DEFENDANT'S HYPERLINK TO THE SPLC WEBSITE IS NOT ACTIONABLE ................................................................................................................... 8

V.    BRIMELOW CANNOT PLAUSIBLY ALLEGE ACTUAL MALICE ............................ 9

The Times respectfully submits this reply memorandum of law in further support of its motion to dismiss Plaintiff Peter Brimelow's Second Amended Complaint ("Compl."). Brimelow's opposition advances a number of arguments, but he begins and concludes with a remarkable pitch for how the First Amendment should work. The First Amendment, he argues, should not only give him the freedom to air his "dissident ideas"; it should also shelter him from criticism or social rebuke. The Court should punish The Times for its speech to "ensure 'a hospitable climate'" for his own, and it should intervene to prevent "intellectual witch hunt(s)" that "enforce taboos" against his ideas. *See* Pl.'s Opp. to Dismissal Under Rule 12(b), ECF No. 28 ("Opp.") at 6–7, 21–25. Brimelow's argument is at odds with history, law, and logic. The First Amendment protects Brimelow's right to express extremist opinions on race and immigration. It equally protects The Times and others who criticize him for them. Brimelow's vision of a First Amendment that protects one but not the other is without legal merit, and his complaint should be dismissed in its entirety.

I.   **PLAINTIFF MISREPRESENTS AND MISAPPLIES THE LAW ON OPINION**

   A.   **The Allegedly Defamatory Statements Have No Precise Meaning and Cannot Be Proven True or False**

The Court of Appeals has been clear about how a court is to determine whether a statement is an assertion of fact or an opinion: "The dispositive inquiry, under either Federal or New York law, is whether a reasonable reader could have concluded that the articles were conveying facts about the plaintiff." *Gross v. New York Times*, 82 N.Y.2d 146, 152 (1993) (quotation and citation omitted). Plaintiff gamely argues that "verifiability is not entitled to great weight" in the opinion analysis, but fails to cite a single case in support of that contention. Opp. 8. That is unsurprising: courts in this Circuit and elsewhere routinely align with *Gross* and deem verifiability the key element that distinguishes fact from opinion. *See, e.g.*, *Hotchner v. Castillo-*

1

*Puche*, 551 F.2d 910, 913 (2d Cir. 1977) ("An assertion that cannot be proved false cannot be held libellous [sic]."); *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976) (protecting statements "so debatable, loose and varying, that they are insusceptible to proof of truth or falsity"); *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1572 (D.C. Cir. 1984) ("Since opinions cannot be false, they cannot be the basis of a defamation action."), *vac'd on other grounds*, 477 U.S. 242 (1986).[1]

More specifically, and directly relevant to this case, courts repeatedly have held that critical labels used in political discourse are opinions, not statements of facts, because they are subjective judgments and not verifiable. *See*, *e.g.*, *Cummings v. City of N.Y.*, 2020 U.S. Dist. LEXIS 31572, at *54 (S.D.N.Y. Feb. 24, 2020) ("Statements describing Plaintiff . . . as 'racist' . . . are nonactionable statements of opinion."); *Buckley*, 539 F.2d at 893 (positioning someone on "a spectrum" of thought from "left totalitarian" to the "neodespotism of the right" "[n]ecessarily" is a matter of opinion). The Times's use of terms like "white supremacist" or "white nationalist" was an interpretive characterization, shorthand to convey to readers the views that VDARE publishes or Brimelow espouses. The terms sweep up an array of beliefs and perspectives, just as calling Donald Trump, Rand Paul, Mitt Romney, and George W. Bush "conservative" would be

---

[1] Plaintiff also quibbles over whether the test for opinion under New York law has three factors or four. *See* Opp. 8 ("[T]he fact/opinion analysis takes place under three elements cited above, not the four urged by Defendant."). There is no mystery. In *Steinhilber v. Alphonse*, the Court of Appeals laid out four factors: "(1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might "signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Steinhilber*, 68 N.Y.2d 283, 292 (1986). In some subsequent formulations of the standard, the third and fourth factors have been grouped together. *See, e.g., Gross*, 82 N.Y.2d at 153; *Davis v. Boeheim*, 24 N.Y.3d 262, 270 (2014); *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008).

2

apt even though they have differing views on a range of issues and the most extreme views of one could not be reasonably attributed to the other by the use of the label.

In an attempt to evade the relevant caselaw, Brimelow seeks refuge in the dictionary and then offers a misguided discussion of cases that involve racially motivated acts rather than labels. Neither helps his case. He first argues that because the phrases "white nationalist," "white supremacist," and "anti-Semitic" appear in dictionaries, they must be actionable factual statements and not opinion. That is obviously absurd. Words that appear in dictionaries may still be "opinion" as a matter of law. (The word "absurd" also appears in Merriam-Webster, but that does not make it an actionable factual statement.) Unsurprisingly, words with precise dictionary definitions still have been found to be opinion. *See, e.g.*, *Greenbelt Cooperative Publ'g Assoc. v. Bresler*, 398 U.S. 6, 13 (1970) (use of the word "blackmail" in a newspaper to characterize plaintiff's position was nonactionable opinion). The opinion analysis focuses not on the dictionary definition but on how the words are understood in context by a reasonable reader.

Equally misleading is Brimelow's contention that "[n]umerous New York State Courts have held similar charges to be actionable." Opp. 3. In all of the cases Brimelow cites, defendants were accused of having taken specific actions or made specific statements.[2]

---

[2] The statement at issue in *Schermerhorn v. Rosenberg*, was read to mean plaintiff "expressed a desire that blacks be excluded from the board of directors" of his proposed development corporation. *Schermerhorn*, 73 A.D.2d 276, 284 (2d Dep't 1980). In *Scott v. Cooper*, 226 A.D.2d 360 (2d Dep't 1996), defendant accused the plaintiff police chief of running a department that "systematically targets blacks and poor whites" for arrest. *Cooper v. Town of E. Hampton*, 888 F. Supp. 376, 377 n.1 (E.D.N.Y. 1995). *Herlihy v. Metropolitan Museum of Art* was not an opinion case at all. 214 A.D.3d 250, 256–57 (1st Dep't 1995). Regardless, the allegedly defamatory statements at issue there—the charge that the plaintiff had uttered certain anti-Semitic remarks to other museum volunteers—were clearly susceptible of being proven true or false; either plaintiff said those things or she didn't. Lastly, the statements at issue in *Sheridan v. Carter* included claims that plaintiff had physically abused an employee, paid her only $300 per week for long

Defendants either had or had not said or done the things they were accused of; an objective truth existed and could be proven through admissible evidence. A description of a person's ideology is not susceptible to that kind of proof. Brimelow's attempt to analogize to hate crimes prosecutions is equally unavailing. Opp. 3. No one gets convicted of being a white supremacist. Whether a criminal defendant targeted a particular victim because he was African-American or because he was wearing a yarmulke is a question of fact that a jury can properly decide; whether that same defendant can appropriately described as a "white nationalist" or "anti-Semitic" is not.

### B. Context Is Not the Dispositive Factor and Courts Routinely Find That Statements in News Reports are Non-Actionable Opinion

In the end, Brimelow places all his stock in the context prong of the opinion analysis—specifically, that the statements at issue appeared in news columns rather than in an op-ed or editorial. To make his case, Plaintiff selectively quotes from a single law review article from 1978 that in fact undercuts his argument. Opp. 9. *See* Frederick F. Schauer, *Language, Truth, and the First Amendment: An Essay in Memory of Harry Canter*, 64 Va. L. Rev. 263, 276–79 (1978). But nothing in the article (nor in any pertinent case law) suggests that context, rather than verifiability, is the crux of the opinion analysis. To the contrary, the author of the article writes, "[i]gnoring the inherent subjectivity and imprecision of language may lead to a constitutionally impermissible evaluation of the truth of normative or judgmental statements in the guise of examining factual truth." *Id.* at 281.

Plaintiff cites just one case, *Brian v. Richardson*, in support of his position that the context factor trumps all else. 87 N.Y.2d 46 (1995). But that case in no way suggests that context is dispositive. Rather, the context was particularly significant *in that case* because the article at

---

hours of labor, and yelled racial slurs during a specific altercation. 48 A.D.3d 444, 445 (2d Dep't 2008).

issue drew upon "rumors and accusations that were floating around the Justice Department" in order "to advocate an independent governmental investigation." *Id.* at 53. The same statements might have been defamatory if uttered by government officials, the court suggested, but in the context of an editorial calling for an investigation, a reasonable reader would understand them "as mere *allegations* to be investigated rather than as *facts*." [3] *Id.* At bottom, as *Brian* itself made clear, the real question is "whether a reasonable reader or listener would understand the complained-of assertions as opinion or statements of fact"; "the forum in which a statement has been made, as well as the other surrounding circumstances comprising the 'broader social setting,' are only useful gauges" to aid the broader determination. *Id.* at 52.

Brimelow is simply wrong in his suggestion that verifiability should be ignored and that the articles' publication on the news side of the editorial divide, alone, carries the day. Opp. 8–9. News stories necessarily employ the language of opinion to explain real world events, virtually any time something is described. For example, news reports routinely describe crowds as "enthusiastic," or "sparse"—terms with "loose and varying" meanings. *See Buckley*, 539 F.2d at 894. And New York courts have recognized that statements of opinion are entitled to protection, even when they appear in news articles. *See Borzellieri v. Daily News, LP*, 39 Misc.3d 1215(A), *aff'd sub nom. Silverman v. Daily News, L.P.*, 129 A.D.3d 1054 (2d Dep't 2015), *appeal dismissed* 26 N.Y. 3d 962 (2015); *Morgan v. NYP Holdings, Inc.*, 2017 N.Y. Misc. LEXIS 5035, at *16–23 (Sup. Ct. Kings Cty. Dec. 15, 2017); *Cummings*, 2020 U.S. Dist. LEXIS 31572, at *54–60. Brimelow argues that precedent should "give way" in light of decisions like *Gross v.*

---

[3] The statements at issue—*e.g.*, that the plaintiff "was part of a scheme to steal [certain] software to gain an unfair business advantage," "had sold stolen software to foreign governments to advance illegal covert activities," and "been involved in the murder of an investigative journalist"—were statements that had a far more precise meaning, and were more capable of being verified, than The Times's use of terms like "white nationalist." *Brian*, 87 N.Y.2d at 50.

*New York Times*, where the court found that some of the statements at issue would be read as factual because of their placement in a deeply reported investigative news article. Opp. 9. But the case law speaks for itself—including *Gross*. *Gross* acknowledges that even in a long investigative news piece some of the statements complained about were the writers' "hypotheses," in other words, opinion. 82 N.Y.2d at 154. The New York cases cited above, decided *after Gross* and heavily reliant on its reasoning, concluded that, based on a holistic analysis of the factors, statements in news articles were constitutionally protected. Indeed, *Silverman*, *Morgan*, and *Cummings* embraced perhaps the most important principle put forward in *Gross*, namely that New York law takes a more sweeping view of what constitutes opinion and "is decidedly more protective" than the First Amendment. *Gross*, 82 N.Y.2d at 152; *accord Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 249 (1991). That broad protection for statements of opinion shields The Times from liability for the characterizations at issue here.

## II.     ARTICLES REPORTING ON VDARE'S PUBLICATION OF THE WORD "KRITARCH" ARE NOT ACTIONABLE

Brimelow makes an odd demand that the Court take "judicial notice of the fact that, as a matter of law, the term 'kritarch' is 'simply not anti-Semitic.'"  But this is not properly the subject of judicial notice. *See* Fed. R. Civ. P. 201 (notice limited to matters "generally known" or coming from sources "whose accuracy cannot reasonably be questioned"). Brimelow next argues that The Times erred in giving "credence to the hysterical fit of one Ashley Tabbador"— meaning Judge Tabbador. Opp. at 10. But it is hard to see what is improper about a newspaper reporting on a formal complaint to the Department of Justice, made on behalf of the union for federal immigration judges. If reporting on Judge Tabbador's complaint is the gravamen of Brimelow's claim, it is barred by the fair report privilege. *See, e.g.*, *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991) (discussing the purpose and history of the fair report

6

privilege and finding privileged an employee discipline letter shared with the National Cancer Institute); N.Y. Civil Rights Law § 74.

Fundamentally, Brimelow just disagrees with Judge Tabbador, the Anti-Defamation League, and others' interpretation of the modern meaning of "kritarch." Whatever the merits of that etymological debate, reporting on those differences of opinion does not give rise to a defamation claim against The Times. *See* Mem. of Law in Support of Def.'s Mot. to Dismiss, ECF No. 24 ("Mem."), at 17–19. Brimelow's argument that the articles somehow implied the existence of undisclosed facts is simply untethered from the text of the articles. Brimelow fails to identify any false, implied "facts." Rather, he argues that more context should have been given, preferably context unfavorable to the opinions of his intellectual opponents. But, again, whether favorable or unfavorable, reporting on those opinions is not actionable. Finally, as set out further below, Brimelow's opposition fails to explain how any of the debate regarding the word "kritarch" on VDARE is "of and concerning" *him* as a matter of law.

## III. STATEMENTS REGARDING VDARE ARE NOT "OF AND CONCERNING" BRIMELOW

Brimelow initially argues that the court may not consider the "of and concerning" requirement on a motion to dismiss. That is incorrect. Courts routinely dismiss claims on this basis. *See, e.g.*, *Elias v. Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017) ("Whether a plaintiff has satisfied this requirement is typically resolved by the court at the pleading stage." (citation omitted)); *Gilman v. Spitzer*, 538 F. App'x 45 (2d Cir. 2013) (affirming dismissal where plaintiff did not adequately plead the statement at issue was "of and concerning" him); *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28 N.Y.3d 82 (2016) (same).

Second, Brimelow fails to show that The Times's statements about VDARE should be deemed "of and concerning" him. Reporting, for example, that a blog post published on VDARE

7

(one Brimelow did not author and does not claim involvement in) used an anti-Semitic word or was anti-Semitic does not reasonably mean that everyone associated with VDARE is anti-Semitic. Indeed, Brimelow argues that VDARE publishes "writers of all political persuasions" and "every race, religion, nationality and political affiliation," Compl. ¶ 61—including individuals whom Brimelow describes as "white nationalists," Mem. at 5–6. With that statement he concedes that VDARE is not his alter ego or the vehicle only for his views. And of course, as a nonprofit, it has a separate legal identity from Brimelow. One assumes that if a contributor's article on VDARE violated someone's copyright, Brimelow would object to the plaintiff seeking to enforce the judgment against Brimelow, personally.

Finally, Brimelow apparently misunderstands why the Reuters Article is not actionable. *See* Opp. at 14. The meaning of the word "bot-farm" is not at issue. His claim fails because, first, the article was not "of and concerning" him, and, second, the Reuters Article does not say what he claims it does. It did not report that VDARE (let alone Brimelow) engaged in "coordinated inauthentic behavior" or had a "network of fake accounts." *See* Mem. at 20. Neither VDARE nor Brimelow are accused of improprieties. *Id.* In addition, claims based on the Reuters Article also may properly be dismissed pursuant to the wire defense doctrine and Section 230 of the Communications Decency Act. *See* Mem. at 21 n.7.

## IV.    DEFENDANT'S HYPERLINK TO THE SPLC WEBSITE IS NOT ACTIONABLE

As set out in our moving memorandum of law, to the extent that Brimelow premises his defamation claim on the contents of the SPLC website (rather than The Times's own articles), those claims fail. Mem. at 21. This is because it is well-settled that merely hyperlinking to a website does not "publish" the contents of the website as a matter of law, an element of any

defamation claim. *Id.*[4] In opposition, Brimelow cites to dicta that is not relevant to the facts of this case. And he relies on a case, *Enigma Software Group USA v. Bleeping Computer LLC*, where the court did not even reach the issue. 194 F. Supp. 3d 263, 277 (S.D.N.Y. 2016) ("[T]he Court has no occasion to determine, at this stage, whether any of [the 2016 posts] amount to a republication of the [hyperlinked] 2014 Post"). As a matter of law, hyperlinking to the SPLC website did not "republish" its contents. *See In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012) ("[A] mere reference to an article, regardless how favorable it is as long as it does not restate the defamatory material, does not republish the material." (collecting cases)).

### V. BRIMELOW CANNOT PLAUSIBLY ALLEGE ACTUAL MALICE

On actual malice, Brimelow faces a significant burden: he must plausibly allege facts sufficient to show by clear and convincing evidence that The Times knew he did not openly hold views that could be termed white nationalist or white supremacist or that The Times entertained substantial doubts about whether that was so. *See, e.g.*, *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). He has not met that burden. Brimelow's own complaint effectively concedes that the *Times v. Sullivan* actual malice standard applies to his claims. *See* Compl. ¶¶ 62, 100, 126, 144, 158, 180. Brimelow now argues the Court should disregard *Sullivan* and 56 years of state and federal cases. *See* Opp. 22–25. It hardly needs to be said that a district court is bound by the decisions of the Supreme Court of the United States. *See, e.g.*, *United States v. Gardner*, 837 F. Supp. 2d 346, 351–52 (S.D.N.Y. 2011).

Brimelow next contends he has shown actual malice because his "pleading is rife with allegations which, if true, evince pre-conceived hostility." *See* Opp. 21. That is thoroughly beside

---

[4] Courts also have found that merely hyperlinking to an allegedly defamatory website is shielded from liability by Section 230 of the Communications Decency Act. *See, e.g.*, *Vazquez v. Buhl*, 150 Conn. App. 117 (Conn. App. Ct. 2013).

9

the point. "'[A]ctual malice' in the context of the First Amendment does *not* even include 'spite, hostility or intention to harm.'" *Davis v. Costa-Gavras*, 654 F. Supp. 653, 655 (S.D.N.Y. 1987) (quotation omitted). What is relevant is whether The Times knew its statements were false or entertained serious doubts. In *St. Amant v. Thompson*, the Supreme Court gave examples of facts that would support a finding of actual malice: where a story is fabricated by a defendant or is based wholly on "unverified," "anonymous" sources; when the "allegations are so inherently improbable that only a reckless man would have put them in circulation;" or "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." 390 U.S. 727, 732 (1968). Nothing in Brimelow's complaint comes close. Instead, The Times was writing about a man who has publicly averred that his "head is with racial nationalism"—and made the many other statements set out in defendants' motion to dismiss.[5] *See* Mem. at 2–8. Like any other person familiar with Brimelow's public statements, The Times's writers cannot be faulted for concluding (rightly or wrongly) that they were the views of a white nationalist or white supremacist.

---

[5] Brimelow argues the Court may not properly consider those statements because he did not include them in his Amended Complaint. But one of Plaintiff's core allegations, repeated in each cause of action, is that The Times acted maliciously by failing to "seek[] corroboration" from "Plaintiff's website 'VDARE.com'" or to "link[] to Plaintiff's website, 'VDARE.com' or to any original writings by Plaintiff." Compl. ¶¶ 57, 124, 142, 156, 178. The Court may properly take judicial notice of such writings because the truth of the statements are not at issue, Brimelow does not deny that he made the statements, "there was undisputed notice to [Brimelow] of their contents and they were integral to [Brimelow's] claim." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered . . . . Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").

| | |
|---|---|
| Dated: New York, NY<br>August 11, 2020 | Respectfully submitted,<br><br>/s/ David E. McCraw<br>David E. McCraw<br>Dana R. Green<br>Alexandra Perloff-Giles<br>The New York Times Company<br>Legal Department<br>620 Eighth Avenue<br>New York, NY 10018<br>Phone: (212) 556-4031<br>Facsimile: (212) 556-4634<br>Email: mccraw@nytimes.com<br><br>*Attorneys for Defendant* |