UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER BRIMELOW,

                    Plaintiff,

        -v.-

THE NEW YORK TIMES COMPANY,

                    Defendant.

20 Civ. 222 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Peter Brimelow brings this action for libel against Defendant The

New York Times Company, alleging that The New York Times ("The Times")

defamed Brimelow in five articles published online and in print between

January 2019 and May 2020.  The operative complaint is Plaintiff's Second

Amended Complaint, filed on May 26, 2020, in which he seeks $5 million in

actual damages, punitive damages, and costs.  Defendant has moved to

dismiss the Second Amended Complaint for failure to state a claim.  For the

reasons set forth below, the Court grants Defendant's motion in full.

                    **BACKGROUND**[1]

**A.    Factual Background**

    **1.    The Plaintiff and the VDARE Website**

        Plaintiff Peter Brimelow is a prominent opponent of non-white

immigration to the United States.  He is the author of the book *Alien Nation:*

---

[1]     The facts in this Opinion are drawn primarily from Plaintiff's Second Amended
        Complaint (or "SAC" (Dkt. #22)), which is the operative pleading in this case, as well as
        the exhibits attached to the Declaration of David E. McCraw (Dkt. #25): Trip Gabriel, *A
        Timeline of Steve King's Racist Remarks and Divisive Actions*, N.Y. Times (Jan. 15,
        2019), https://www.nytimes.com/2019/01/15/us/politics/steve-king-offensive-

*Common Sense About America's Immigration Disaster* (1995) ("*Alien Nation*"),

and the founder and editor of the website VDARE.com ("VDARE").  (SAC ¶¶ 6,

11, 112).  Together, *Alien Nation* and commentary published on VDARE

comprise much of Brimelow's "original writings."  (*Id.* at ¶¶ 57, 124, 142, 156,

178).  In *Alien Nation*, Plaintiff contends that "the American nation has always

---

quotes.html (the "January Article"); Christine Hauser, *Justice Department Newsletter Included Extremist Blog Post*, N.Y. Times (Aug. 23, 2019), https://www.nytimes.com/2019/08/23/us/justice-department-vdare-anti-semitic.html (the "August Article"); Katie Benner, *Top Immigration Judge Departs Amid Broader Discontent Over Trump Policies*, N.Y. Times (Sept. 13, 2019), https://www.nytimes.com/2019/09/13/us/politics/immigration-courts-judge.html (the "September Article"); Katie Rogers & Jason DeParle, *The White Nationalist Websites Cited by Stephen Miller*, N.Y. Times (Nov. 18, 2019), https://www.nytimes.com/2019/11/18/us/politics/stephen-miller-white-nationalism.html (the "November Article"); Reuters, *Facebook Says It Dismantles Disinformation Network Tied To Iran's State Media*, N.Y. Times (May 5, 2020), originally available at https://www.nytimes.com/reuters/2020/05/05/technology/05reuters-iran-facebook.html (the "May Article"); Jack Stubbs & Katie Paul, *Facebook says it dismantles disinformation network tied to Iran's state media*, Reuters (May 5, 2020), https://www.reuters.com/article/us-iran-facebook/facebook-says-it-dismantles-disinformation-network-tied-to-irans-state-media-idUSKBN22H2DK (the "Reuters Article").

For ease of reference, the Court refers to Defendant's opening brief as "Def. Br." (Dkt. #24); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #28); and Defendant's reply brief as "Def. Reply" (Dkt. #31).

The Court also takes judicial notice of Plaintiff's published writings, including his book *Alien Nation: Common Sense About America's Immigration Disaster* (1995), and his commentary on the website VDARE.com ("VDARE"), all of which are incorporated by reference in the Second Amended Complaint, as Plaintiff possesses those writings and indeed criticizes The Times for not citing to this material when referencing Plaintiff or VDARE in the articles in question (*see* SAC ¶¶ 57, 124, 142, 156, 178).  The Court may properly take judicial notice of such statements because (i) the truth of the statements is not at issue; (ii) Plaintiff does not deny that he made the statements; (iii) there was undisputed notice to Plaintiff of their contents; and (iv) they are integral to Plaintiff's claims.  *See Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered[.] ...  Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *see also In re J.P. Jeanneret Assocs.*, 769 F. Supp. 2d 340, 354-55 (S.D.N.Y. 2011).  The Southern Poverty Law Center ("SPLC") entry on "Peter Brimelow," linked to by one of the articles at issue and cited in the Second Amended Complaint (*see* SAC ¶ 68), and its entry on VDARE, linked to in another article, also are incorporated by reference.

had a specific ethnic core.  And that core has been white."  (Def. Br. 3 (quoting *Alien Nation* 10)).  Elsewhere he has said, regarding his ideological viewpoint, that "my heart is with civic nationalism, but my head is with racial nationalism."  (Def. Br. 6 (quoting an interview with Plaintiff published on VDARE)).

Plaintiff is VDARE's founder and editor (SAC ¶ 11), but it is not a purely personal platform; rather, it is a site operated by a duly incorporated nonprofit foundation, according to its own statements (*see, e.g.*, *id.* at ¶ 177 (asserting VDARE's tax-exempt status under 26 U.S.C. § 501(c)(3))).  VDARE provides a platform for those "critical of America's post-1965 immigration policies" (*id.* at ¶ 11), and is particularly concerned with "how long the US can continue as a coherent nation-state in the face of current immigration policy" (Def. Br. 5 (quoting VDARE's "About" webpage)).  VDARE's founding principles include that "[t]he racial and cultural identity of America is legitimate and defensible: Diversity per se is not strength, but a vulnerability."  (*Id.* (quoting VDARE's "About" webpage)).  VDARE routinely publishes articles by individuals whom Plaintiff identifies as "white nationalists," a term he has defined to mean "people aiming to defend the interests of American whites — as they are absolutely entitled to do."  (*Id.* (quoting Plaintiff's writings on VDARE)).

## 2.   The Alleged Defamation

Plaintiff claims that in five articles published between January 2019 and May 2020, The Times defamed Plaintiff by portraying him and content published on VDARE as "white nationalist," "white supremacist," and "anti-

Semitic."  Plaintiff denies that he is a "white nationalist" and instead characterizes himself as a "civic nationalist."  (SAC ¶ 60).  Plaintiff contends that The Times incorrectly imputed to him "race hatred and traits inconsistent with his profession" (*id.* at ¶¶ 101, 175), and thereby "exposed the Plaintiff to public hatred, contempt, ridicule, and disgrace, lowered his reputation, and deterred decent people from associating or dealing with him" (*id.* at ¶¶ 102, 127, 145, 159, 181).  This allegedly caused special damages to Plaintiff in the form of injury to reputation and loss of pecuniary opportunities, in the amount of approximately $700,000 per cause of action.  (*Id.* at ¶¶ 105, 130, 148, 162, 184).

### a.   The January 15, 2019 Article

On January 15, 2019, The Times published an article about Iowa Congressman Steve King and his history of offensive comments.  (January Article; *see also* SAC ¶ 48).  As an example, the article stated that in 2012, "[o]n a panel at the Conservative Political Action Conference with Peter Brimelow, an open white nationalist, Mr. King referred to multiculturalism as: 'A tool for the Left to subdivide a culture and civilization into our own little ethnic enclaves and pit us against each other.'"  (Def. Br. 8 (citing SAC ¶ 52); *see also* January Article).  The article later was revised to refer to Plaintiff as a "white nationalist," rather than an "open white nationalist."  (SAC ¶ 63; *see also* January Article).  Where the article states Plaintiff's name, it hyperlinks to the Southern Poverty Law Center's ("SPLC") website entry on Plaintiff, which entry categorizes Plaintiff's ideology as "white nationalist" and includes

examples of Plaintiff's public statements.  (SAC ¶ 68).  Plaintiff asserts that he is not a white nationalist and that the January Article harmed his reputation (i) by accusing him "of being a figure of division and racism" and (ii) by linking to the SPLC website.  (*Id.* at ¶¶ 51, 68-75).

### b.    The August 23, 2019 Article

In August 2019, a controversy erupted among immigration judges when the Department of Justice Executive Office for Immigration Review ("EOIR") included in its daily briefing a VDARE blog post that referred to two immigration judges as "kritarchs."  (*See* August Article; *see also* SAC ¶¶ 108-10).  The president of a union of immigration judges submitted a complaint to the EOIR, protesting that the post "directly attacks sitting immigration judges with racial and ethnically tinged slurs."  (August Article).  The Times reported on the incident, including the union's complaint, EOIR's handling of the matter, the history of the word "kritarchy," and VDARE's response to the controversy.  (*Id.*).  The article does not reference Plaintiff, but Plaintiff asserts that it was false and personally defamatory of him to quote officials and other third parties stating that VDARE is "an anti-immigration hate website" and a "white nationalist website," and, further, that "[m]any of the extremists on VDare who use [the term 'kritarch'] are in fact anti-Semites."  (SAC ¶¶ 110, 122).

### c.    The September 13, 2019 Article

One month later, The Times published a related article about the departure of senior EOIR officials.  (*See* September Article; *see also* SAC

¶¶ 133-34).  The article details a conflict between immigration judges and the Trump administration, and notes that, "[l]ast month, tensions increased when a daily briefing that is distributed to federal immigration judges contained a link to a blog post that included an anti-Semitic reference and came from a website that regularly publishes white nationalists."  (September Article).  The underlined text hyperlinks to the August Article.  The September Article does not reference Plaintiff and does not name VDARE, but Plaintiff alleges it personally defamed him to say that a blog post on VDARE used an anti-Semitic term.  (SAC ¶¶ 135, 138-40).

### d.    The November 18, 2019 Article

On November 18, 2019, The Times published a piece about Stephen Miller, a close adviser to President Donald J. Trump who has been a driving force of the administration's immigration policy.  (*See* November Article; *see also* SAC ¶ 151).  The article states that leaked emails suggested that Miller "has maintained deeper intellectual ties to the world of white nationalism than previously known," and includes examples of Miller's terminology, theories, and cited sources of information.  (November Article).  It quotes experts opining on the links between Miller's ideas and white nationalism.  (*Id.*).  The article says that Miller cited VDARE, which was founded by "Peter Brimelow, … [who] believes that diversity has weakened the United States, and that the increase in Spanish speakers is a 'ferocious attack on the living standards of the American working class.'"  (*Id.*).  The underlined text hyperlinks to reporting and a video in which Brimelow made those statements.

6

The November Article reports that the SPLC "labeled VDARE a '<u>hate</u> <u>website</u>' for its ties to white nationalists and publication of race-based science[.]" (November Article).  The underlined text hyperlinks to the SPLC's webpage on VDARE.  The article explains that VDARE "approvingly cite[s] Calvin Coolidge's support for a 1924 law that excluded immigrants from southern and Eastern Europe, and praise[s] 'The Camp of the Saints,' a 1973 French novel that popularizes the idea that Western civilization will fall at the hands of immigrants"; it also quotes experts explaining why those statements are indicative of white nationalist beliefs.  (*Id.*).  Plaintiff asserts that the statements about him and VDARE were false and defamatory of him.  (SAC ¶¶ 153-63).

### e.   The May 5, 2020 Article

On May 5, 2020, The Times published a wire article from Reuters.  (*See* May Article; *see also* Reuters Article).  The May Article reports a Facebook announcement that the social medial platform had identified and removed several networks of accounts engaged in "coordinated inauthentic behavior," including a "U.S.-based campaign with ties to white supremacist websites VDARE and the Unz Review."  (May Article; *see* also SAC ¶ 171).  The article does not mention Plaintiff, but Plaintiff nonetheless asserts that the article, because of its reference to VDARE, accuses him personally of "race hatred." (SAC ¶ 175).  He also claims that the article accuses him of "manipulating on-line readers by utilizing a 'bot-farm' of fake accounts" and engaging in actions that violated VDARE's "501(c)(3) status."  (*Id.* at ¶¶ 176-77).

B.      **Procedural History**

Plaintiff filed the original complaint on January 9, 2020 (Dkt. #1), and filed amended complaints on April 23, 2020 (Dkt. #16), and May 26, 2020 (Dkt. #22).  After submitting a pre-motion letter to the Court announcing its intent to so move (Dkt. #17), Defendant filed its motion to dismiss on June 18, 2020 (Dkt. #23-25).  Plaintiff filed his opposition submission on July 28, 2020 (Dkt. #28), and Defendant filed its reply submission on August 11, 2020 (Dkt. #30).

## DISCUSSION

A.      **Applicable Law**

1.      **Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss pursuant to Federal Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint.  *Id.*  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*; *see also Twombly*, 550 U.S. at 555 (noting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (quoting *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986))).  "Because a defamation suit 'may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit

itself,' courts should, where possible, resolve defamation actions at the pleading stage." *Adelson* v. *Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) (quoting *Washington Post Co.* v. *Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

### 2.    Defamation Under New York Law

Because subject matter jurisdiction in this case is based upon diversity of citizenship, the Court applies the choice of law rules of the forum state. *See Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New York choice of law rules mandate application of the substantive law of the state with the most significant relationship to the alleged tort. *See Reeves* v. *Am. Broad. Cos.*, 719 F.2d 602, 605 (2d Cir. 1983) (citing *Nader* v. *Gen. Motors Corp.*, 25 N.Y.2d 560 (1970)). The parties' briefing indicates their mutual belief that New York law applies in this case (*see, e.g.*, Def. Br. 13; Pl. Opp. 2), and the Court agrees, given that The Times has its principal place of business in New York and published the allegedly defamatory statements from that location (*see* SAC ¶ 4).

Under New York law, defamation is defined as "a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster* v. *Churchill*, 87 N.Y.2d 744, 751 (1996) (citations and internal quotation marks omitted). "Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance." *Aronson* v. *Wiersma*, 65 N.Y.2d 592, 593 (1985). "Under New York law, to establish a claim for defamation, a

plaintiff must plead [i] a defamatory statement of fact; [ii] that is false; [iii] published to a third party; [iv] 'of and concerning' the plaintiff; [v] made with the applicable level of fault on the part of the speaker; [vi] either causing special harm or constituting slander per se; and [vii] not protected by privilege." *Cummings* v. *City of New York*, No. 19 Civ. 7723 (CM), 2020 WL 882335, at *15 (S.D.N.Y. Feb. 24, 2020) (internal quotation marks omitted).

**B.    Analysis**[2]

### 1.    Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted as to the January Article

The Times argues that Plaintiff's cause of action arising out of the January Article should be dismissed because: (i) the article's characterizations of Plaintiff, first, as an "open white nationalist" (*see* SAC ¶ 50), and later revised to a "white nationalist" (*see* January Article; SAC ¶ 63), constitute non-actionable statements of opinion rather than false statements of fact (Def. Br. 13-17); (ii) the article's hyperlink to the SPLC's entry on Plaintiff did not republish allegedly defamatory material held on the SPLC site such that The Times can be held liable for that material (*id.* at 21); and (iii) Plaintiff has failed to show that The Times acted with actual malice towards Plaintiff (*id.* at 22-25). Plaintiff's efforts to refute each of arguments are discussed in the remainder of this section.  (*See* Pl. Opp. 8-10, 14-21).

---

[2]    In its Motion to Dismiss, Defendant does not challenge the adequacy of Plaintiff's allegation of damages.  In any event, the Court finds that Plaintiff has sufficiently pleaded damages to survive dismissal on that ground.

### a.    Fact Versus Opinion

Central to the dispute in this case is the "distinction between expressions of opinion, which are not actionable, and assertions of fact, which may form the basis of a viable libel claim." *Gross* v. *New York Times Co.*, 82 N.Y.2d 146, 151 (1993).  Because "falsity is a necessary element of a defamation cause of action and only facts are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action." *Rosner* v. *Amazon.com*, 18 N.Y.S.3d 155, 157 (2d Dep't 2015) (citations and internal quotation marks omitted).

The United States Supreme Court has recognized that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 20 (1990).  Thus, "loose, figurative, or hyperbolic language" is protected by the First Amendment, as it cannot reasonably be interpreted as stating actual, provable facts about an individual. *Id.* at 21.  Protecting such speech ensures that "public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of this Nation." *Id.* at 20.

The New York Court of Appeals has embraced an even more free-speech-protective standard under the New York State Constitution for determining what constitutes non-actionable opinion.  *See generally Immuno AG* v. *Moor-Jankowski*, 77 N.Y.2d 235 (1991), *cert. denied*, 500 U.S. 954 (1991); *see also Celle* v. *Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir. 2000) ("Unlike

11

the Federal Constitution, the New York Constitution provides for absolute protection of opinions.").

The question whether a statement constitutes fact or opinion is a question of law for the court to decide.  *See Chau* v. *Lewis*, 771 F.3d 118, 128 (2d Cir. 2014).  To make this determination, courts consider three factors: (i) whether the statement in issue has a precise, readily understood meaning; (ii) whether the statement is capable of being proven true or false; and (iii) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers that what is being read is likely to be opinion, not fact.  *See Gross*, 82 N.Y.2d at 153.  In applying these factors, courts have adopted a "holistic approach."  *Davis* v. *Boeheim*, 24 N.Y.3d 262, 270 (2014).  This involves looking "to the over-all context in which the assertions were made and determin[ing] on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the plaintiff."  *Id.* (internal quotation marks and alterations omitted) (quoting *Brian* v. *Richardson*, 87 N.Y.2d 46, 51 (1995)).  "The burden rests with the plaintiff to establish that in the context of the entire communication a disputed statement is not protected opinion."  *Celle*, 209 F.3d at 179.

In determining whether a particular communication is actionable, New York courts recognize a "distinction between a statement of opinion that implies a basis in facts that are not disclosed to the reader or listener, and a statement of opinion that is accompanied by a recitation of the facts on which

12

it is based or one that does not imply the existence of undisclosed underlying facts." *Gross*, 82 N.Y.2d at 153 (internal citations omitted) (citing *Hotchner* v. *Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977), *cert. denied sub nom. Hotchner* v. *Doubleday & Co.*, 434 U.S. 834 (1977); *Buckley* v. *Littell*, 539 F.2d 882, 893 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977)).  The former is actionable because a reasonable reader would infer that the writer knows certain facts, unknown to the audience, that support the opinion and are detrimental to the person toward whom the communication is directed; the latter is not actionable because a statement of opinion offered after a recitation of the facts on which it is based is likely to be understood by the audience as conjecture.  *See id.* at 153-54.

In his opposition, Plaintiff argues that the inclusion of the January Article in the "News" section rather than in the "Opinion" section of The Times is dispositive of whether the statements contained in the article should be considered fact or opinion.  (*See* Pl. Opp. 3, 4, 8).  The Court does not agree that the analysis is this simple.  Instead, it must consider the "full context of the communication" in which the allegedly defamatory statement appears. *Gross*, 82 N.Y.2d at 154.

By the Court's reading, the overall tone of the January Article indicates that it is meant as commentary rather than straight news.  The article clearly conveys a particular perspective about Congressman King and his views; one need not look any further than the headline's reference to "racist remarks and divisive actions." (January Article).  Thus, a reasonable reader would

13

understand that the January Article provides opinion as well as facts.  *See, e.g.*, *Russell* v. *Davies*, 948 N.Y.S.2d 394, 394 (2d Dep't 2012) (finding that a reasonable reader of news reports describing plaintiff's essay as racist and anti-Semitic "would have concluded that he or she was reading and/or listening to opinions"); *Ratajack* v. *Brewster Fire Dep't Inc.*, 178 F. Supp. 3d 118, 165-66 (S.D.N.Y. 2016) (holding that claims that plaintiff was a "racist" were non-actionable opinion).

Narrowing its focus to the references to Plaintiff, the Court reaches different conclusions about the two different characterizations of Plaintiff.  The Court concludes that the January Article's original description of Plaintiff as an "open white nationalist," considered in context, is stated as a falsifiable fact and "impl[ies] the existence of undisclosed underlying facts."  *Gross*, 82 N.Y.2d at 153.  Describing Plaintiff as an "*open* white nationalist" implies that he publicly self-identifies as such, rather than that The Times is making its own judgment about how to characterize his views.  Whether Plaintiff self-identifies as a "white nationalist" is verifiable, and indeed in this lawsuit Plaintiff ardently denies that he does so.  Additionally, the article does not provide any supporting information to contextualize the characterization.  Accordingly, this alleged defamation cannot be dismissed as non-actionable opinion.

However, the "stealth edit," as Plaintiff describes it (*see* SAC ¶ 66), to modify the text to refer to Plaintiff as a "white nationalist" and to link to the SPLC's webpage on Plaintiff, changes the character of the statement.  Again, the overall tone of the article suggests opinion-inflected commentary.  In that

context, the description of Plaintiff as a "white nationalist" is properly interpreted as opinion because the term has a "debatable, loose and varying" meaning in contemporary discourse. *Buckley*, 539 F.2d at 894. To some, it may be essentially synonymous with "anti-immigration," a descriptor that Plaintiff cannot plausibly deny; to others, it may be synonymous with "white supremacist," which suggests a belief in a racial hierarchy that is not specific to the United States. There is no single, precise understanding of the term "white nationalist" that is falsifiable such that The Times's characterization of Plaintiff as such constitutes a statement of fact. Furthermore, the link to the SPLC's website, as objectionable as Plaintiff finds it, provides the previously-missing underlying basis for the characterization. Therefore, the Court finds that the final version of the January Article referring to Plaintiff as a "white nationalist" presents only non-actionable opinion.

In sum, the Court concludes that the original version of the January Article states as a matter of fact that Plaintiff is an "open white nationalist" and is therefore actionable, whereas the modified version of the January Article states as a matter of opinion that Plaintiff is a "white nationalist" and is therefore non-actionable.

### b.      Republication of SPLC Material

"Under New York defamation law, publication is a term of art." *Albert* v. *Loksen*, 239 F.3d 256, 269 (2d Cir. 2001) (internal quotation marks omitted) (quoting *Ostrowe* v. *Lee*, 256 N.Y. 36, 38 (1931) (Cardozo, C.J.)). Material is deemed published "as soon as read by any one else." *Id.* There is no dispute in

this case that the five articles at issue were "published" in the legal sense of the term.  However, Plaintiff's claims implicate a corollary question, namely, whether The Times's manner of hyperlinking to the SPLC's articles on Plaintiff and VDARE constituted republication such that The Times is liable for drawing attention to allegedly defamatory content regarding Plaintiff published on the SPLC's website.  (*See* SAC ¶¶ 68, 74-75, 83; *see also* Def. Br. 21; Pl. Opp. 14-16; Def. Reply 8-9).

Courts have concluded that merely hyperlinking to an existing publication does not duplicate the content of that publication and give rise to liability.  *See Mirage Entm't, Inc.* v. *FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 39 (S.D.N.Y. 2018) (citing *Doctor's Data, Inc.* v. *Barrett*, 170 F. Supp. 3d 1087, 1137 (N.D. Ill. 2016); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012)).  In contrast, courts have found that republication does occur when a defendant not only links to previously published material, but also repeats the allegedly defamatory statements.  *See Enigma Software Grp. USA* v. *Bleeping Computer LLC*, 194 F. Supp. 3d 263, 277-78 (S.D.N.Y. 2016) (declining to dismiss claims where internet posts went "beyond merely hyperlinking" to the original post and instead "contain[ed] additional statements which [plaintiff] alleges are themselves defamatory"); *see also Clark* v. *Viacom Int'l Inc.*, 617 F. App'x 495, 505 (6th Cir. 2015) (unpublished decision) (explaining that "the test of whether a statement has been republished is if the speaker has affirmatively reiterated it in an attempt to reach a new audience that the statement's prior dissemination did not

16

encompass" (citing *Firth* v. *State*, 98 N.Y.2d 365, 371 (2002); RESTATEMENT (SECOND) OF TORTS § 577A, cmt. D)).

In the January Article, The Times hyperlinked to the SPLC's entry on Plaintiff in support of its characterization of Plaintiff as a "white nationalist." The Times argues that it "is not liable for the contents of the SPLC website, simply because it hyperlinked to the site" (Def. Br. 21); Plaintiff responds that "Defendant not only hyperlinked to the SPLC website, but repeated and endorsed the smears found on the SPLC website" (Pl. Opp. 15). The Court agrees with The Times that it would not be liable for content published on the SPLC's website had it merely linked to that site, *see Mirage Entm't, Inc.*, 326 F. Supp. 3d at 39, but disagrees that that is all The Times did. Rather, the January Article adopted and shared with a new audience the SPLC's characterization of Plaintiff as a "white nationalist." This constitutes potentially actionable republication. *See Enigma Software Grp. USA*, 194 F. Supp. 3d at 278; *see also Clark*, 617 F. App'x at 505. However, as discussed above, the statement that The Times republished is a statement of opinion that does not provide a basis for a defamation claim.

### c.   Showing of Actual Malice

"If the plaintiff is a public figure suing a media defendant, the First Amendment requires actual malice." *Celle,* 209 F.3d at 176 (citing *Curtis Publ'g Co.* v. *Butts*, 388 U.S. 130, 155 (1967)). "Those who have voluntarily sought and attained influence or prominence in matters of social concern are generally considered public figures." *Id.* (citing *Gertz* v. *Robert Welch, Inc.*, 418

17

U.S. 323, 324 (1974)).  Plaintiff implicitly acknowledges that he is a public figure (SAC ¶¶ 6, 100, 112-13); thus he must plead and prove actual malice by "clear and convincing evidence."  *Contemporary Mission* v. *The N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988).

"Actual malice" means that a publisher acted with knowledge that statements were false, or despite a "high degree of awareness" of their "probable falsity."  *Harte-Hanks Commc'ns, Inc.* v. *Connaughton*, 491 U.S. 657, 667 (1989).  Mere deviation from normal journalistic standards does not constitute actual malice.  *See, e.g.*, *id.* at 665 ("[A] public figure plaintiff must prove more than an extreme departure from professional standards" to demonstrate actual malice); *see also Biro* v. *Condé Nast*, 963 F. Supp. 2d 255, 285 (S.D.N.Y. 2013).  This "heavy burden of proof," *Contemporary Mission*, 842 F.2d at 621, serves a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," and permit even "erroneous" commentary about public figures in certain circumstances, *N.Y. Times* v. *Sullivan*, 376 U.S. 254, 270-72 (1964).  When a plaintiff fails to plausibly allege that the publisher knowingly published false statements or acted with reckless disregard for the truth, courts may properly dismiss the case at the pleading stage.  *See, e.g.*, *Biro* v. *Condé Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (stating that to survive a motion to dismiss, "a public-figure plaintiff must plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice" (internal quotation marks omitted)).

18

With respect to the January Article, Plaintiff must plausibly allege that The Times knew, or recklessly ignored information suggesting, that he did not hold "white nationalist" views, but published that characterization anyway. Plaintiff's criticism of The Times's apparent acceptance of the SPLC's characterization and disregard of Plaintiff's objections notwithstanding (*see* Pl. Opp. 16-17), there is ample basis in the material of which the Court has taken judicial notice for The Times to reasonably have deemed Plaintiff's views as falling within a broad colloquial understanding of the term "white nationalist." The Times's decision not to validate Plaintiff's preferred characterization and the differences he perceives between "white nationalism" and "civic nationalism" does not constitute recklessness.  Rather, The Times was within its right to base its description of Plaintiff on its own evaluation of Plaintiff's published writings and other public commentary and on the analysis of an organization The Times perceived as having relevant expertise, namely the SPLC.[3]

Thus, Plaintiff's first cause of action concerning the January Article must be dismissed.

---

[3]     The reporters on the articles at issue in this case were also not precluded from adopting a critical posture towards Plaintiff and his views merely because at one point, twenty-five years ago, two other writers in The Times were more "complimentary" of Plaintiff's book, *Alien Nation*.  (*See* SAC ¶¶ 7-10).  The Court imagines that all sorts of views have been published in The Times in its 169-year existence, many of which would today be declaimed as relics of times gone by.  Social mores change, and the views reflected in The Times are allowed to change with them.  Such evolution does not constitute an "intellectual witch hunt" (Pl. Opp. 7), or "ill will" towards Plaintiff (*see* SAC ¶¶ 68, 98).

## 2.      Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted as to the August and September Articles

Next, Defendant argues that the causes of action arising out of the August and September Articles must be dismissed because: (i) the August and September Articles stated only non-actionable opinion regarding VDARE (*see* Def. Br. 17-19); (ii) the allegedly defamatory statements are not "of and concerning" Plaintiff (*see id.* at 19-20); and (iii) Plaintiff has not adequately pleaded actual malice (*see id.* at 22-25). The Court agrees with Defendant on each point.

### a.      Fact Versus Opinion

Plaintiff's claims with respect to the August and September Articles fail for the same reason as do his claims regarding the January Article: The articles state only opinions, not falsifiable facts. The August Article's characterizations of VDARE are all attributed as the opinion of the individuals discussed in the story, and are not stated as The Times's independent view. (*See* August Article (explaining that: (i) the EOIR briefing "linked to a post from VDare, a website that regularly publishes white nationalists, according to the 440-member union"; (ii) "[t]he Southern Poverty Law Center classifies VDare as an anti-immigration hate website"; (iii) "Judge Tabbador said she learned about the newsletter from colleagues who were outraged about the link to the white nationalist website"; and (iv) "Aryeh Tuchman, associate director of the Anti-Defamation League's Center on Extremism … added that it appeared that extremists, 'mainly confined to the racist, anti-immigrant site VDare,'" have co-opted the term "kritarch")). The September Article provides no such context for

20

the statement that VDARE "regularly publishes white nationalists," but Plaintiff does not appear to object to this part of the statement. (*See* SAC ¶¶ 135-38). In any event, the characterization of some individuals who post on VDARE as "white nationalists" is the same sort of non-actionable opinion commentary discussed previously.[4]

### b.    Statements "Of and Concerning" Plaintiff

To state a claim for defamation, a plaintiff must establish "that the [challenged] matter is published of and concerning the plaintiff." *Kirch* v. *Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). That is, a plaintiff must show that "the allegedly defamatory comment refer[s] to the plaintiff." *Brady* v. *Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786, 788 (2d Dep't 1981). Whether a plaintiff has adequately alleged that the defamatory statements are "of and concerning" him is a question appropriately considered by a court on a Rule 12(b)(6) motion. *See, e.g.*, *Elias* v. *Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017) ("Whether a plaintiff has satisfied this requirement is typically resolved by the court at the pleading stage." (citation omitted)); *Gilman* v. *Spitzer*, 538 F. App'x 45 (2d Cir. 2013) (summary order) (affirming dismissal where plaintiff did not adequately plead the statement at issue was "of and concerning" him); *Three Amigos SJL Rest., Inc.* v. *CBS News Inc.*, 28 N.Y.3d 82, 87 (2016) (same).

"[W]here the person defamed is not named in a defamatory publication, it is necessary, if it is to be held actionable as to him, that the language used be

---

[4]    Some individuals who publish their writings on VDARE may very well self-identify as "white nationalists" or related terms.

such that persons reading it will, in the light of the surrounding circumstances, be able to understand that it refers to the person complaining." *DeBlasio* v. *North Shore Univ. Hosp.*, 624 N.Y.S.2d 263, 264 (2d Dep't 1995).  As a general rule, defamatory words directed at a corporation or organization do not give rise to a claim by the individuals associated with it.  *See, e.g.*, *Gilman*, 538 F. App'x at 47 (concluding that allegations of extensive illegal activity by company were not "of and concerning" an employee); *Cardone* v. *Empire Blue Cross & Blue Shield*, 884 F. Supp. 838, 847-48 (S.D.N.Y. 1995) (statements defamatory of company are not "of and concerning" its CEO); *Three Amigos*, 28 N.Y.3d at 87 (allegations that a strip club was a mafia enterprise were not "of and concerning" individuals associated with the club); *Fulani* v. *N.Y. Times Co.*, 686 N.Y.S.2d 703 (1st Dep't 1999) (statement defaming political group not "of and concerning" a prominent member).

Neither the August Article nor the September Article names Plaintiff. (*See* August Article; September Article).  Nevertheless, Plaintiff claims that the articles defame him personally by referring to a blog post on VDARE as "extremist," saying the post contained an anti-Semitic reference, and quoting sources calling VDARE "an anti-immigration hate website" and a "white nationalist website."  (SAC ¶¶ 110-11, 122, 138-40).  Plaintiff argues that he has "come to be known synonymously with VDARE to the public at large" and "is the face of VDARE," and therefore any reference to VDARE should be deemed a reference to him.  (*See, e.g., id.* at ¶¶ 112-22).

At the same time, however, Plaintiff states that VDARE "publishes writers of all political persuasions, so long as they are critical of America's post-1965 immigration policies." (SAC ¶ 11). That being the case, Plaintiff cannot possibly hold all the views reflected on the site. As Plaintiff points out, when determining whether a person not named has nevertheless been defamed by implication, the relevant audience is not "all the world" but rather "those who knew or knew of plaintiff." (Pl. Opp. 12 (citing Comment to New York Pattern Jury Instruction § 3:25)). The relevant audience in this case — that is, those who are aware of VDARE and Plaintiff's role at the site — can also be presumed to know that the site publishes "writers of all political persuasions" (SAC ¶ 11), and that a blog post authored by someone other than Plaintiff does not necessarily reflect Plaintiff's views on the subject matter discussed. *Cf. Cardone*, 884 F. Supp. at 847 (statements about a company's employees only concern the CEO "if those who know [the CEO] could conclude that ... he was directly responsible for all defalcations of his subordinates. It may be that ... he had ultimate responsibility, but that does not mean he was libeled when the acts of ... [his] employees were impugned.").[5] In the same way, no one would reasonably assume that everything published in The Times reflects the personal views of its executive editor, Dean Baquet. The references in the

---

[5] The Court notes that Plaintiff wants to have it both ways: He claims that everything to do with VDARE is attributable to him, and at the same time objects to The Times drawing inferences about his views based on the content he chooses to publish as editor of VDARE, including views that the articles in dispute characterize as "white nationalist," "white supremacist," "extremist," and "anti-Semitic." The writings by other authors published on VDARE either do or do not reflect back on Plaintiff; they cannot do both simultaneously.

August and September Articles to the controversial blog post are therefore not "of and concerning" Plaintiff as a matter of law.

The references to VDARE more generally — the August Article describes VDARE as a "white nationalist website" (August Article), and the September Article states that the site "regularly publishes white nationalists" (September Article) — may be closer to being "of and concerning" Plaintiff given his prominent role at the site. But the Court need not decide that issue, given that Plaintiff's claims must be dismissed on other grounds.

### c.  Showing of Actual Malice

For the same reasons discussed above regarding the January Article, Plaintiff's claim of "actual malice" is implausible. There is no evidence that The Times knew the characterizations of VDARE in the articles were false and, given the surrounding circumstances — namely, the views Plaintiff himself has previously expressed publicly and the views expressed by other individuals on VDARE, it cannot be said that The Times acted recklessly either.

Consequently, Plaintiff's second and third causes of action are dismissed.

### 3.  Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted as to the November Article

Defendant argues that the cause of action arising out of the November Article must be dismissed because: (i) the November Article stated only non-actionable opinion (*see* Def. Br. 15-17); and (ii) Plaintiff has not adequately pleaded actual malice (*see id.* at 22-25). The Court agrees with Defendant on each point for the same reasons previously discussed, and thus will be brief.

The November Article focuses on Stephen Miller, a close adviser to President Trump, and his "intellectual ties to the world of white nationalism," as described by The Times.  (November Article).  As with the January Article, the overall tone of the article is one of commentary rather than neutral reportage.  The article names Plaintiff as the "founder of the anti-immigration website VDARE" and directly quotes remarks Plaintiff made at the Conservative Political Action Conference in February 2012, with a hyperlink to video of the event.  (*Id.*; Def. Br. 10-11).  These quotes are factually accurate and thus cannot be defamatory.

The November Article further quotes sources describing VDARE as a "hate website," a "white supremacist website," and a "white nationalist organization."  (November Article).  These descriptions are not The Times's, but rather those of the sources cited, and, in any event, are plainly opinion rather than statements of fact.  To the extent Plaintiff objects to The Times placing him into the "world of white nationalism" and referring to his views as "white nationalist thinking" (*see* November Article), these characterizations, like those in the January Article, are properly considered opinion rather than fact.  And again, Plaintiff does not make a plausible showing of actual malice by The Times.  Accordingly, Plaintiff's fourth cause of action does not withstand scrutiny.

### 4.    Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted as to the May Article

Defendant argues that the cause of action arising out of the May Article must be dismissed because: (i) the May Article's reference to VDARE is not "of

and concerning" Plaintiff (*see* Def. Br. 19-21); and (ii) Plaintiff has not adequately pleaded actual malice (*see id.* at 22-25).[6]

The May Article, which the Times republished without modification from the Reuters wire service (*compare* May Article, *with* Reuters Article), discusses a monthly report issued by Facebook in which the company said it had suspended accounts with ties to VDARE that it considered to be engaged in "coordinated inauthentic behavior." (*See* May Article). The May Article also quotes Facebook's head of cybersecurity policy saying that the network of accounts "push[ed] coronavirus-related disinformation" and "promote[d] anti-Semitic and anti-Asian hate speech tied" to the pandemic. (*Id.*). It is plainly Facebook's view — not The Times's or Reuters's — that the Facebook accounts in question had links to VDARE, participated in "coordinated inauthentic behavior," and pushed disinformation and hate speech. Plaintiff does not suggest a basis for the reporters to doubt the validity of Facebook's findings, and the Court cannot think of one.

Furthermore, it strains credulity to say that Facebook's statements regarding the VDARE-connected network are "of and concerning" Plaintiff. There is no suggestion that the "campaign" of inauthentic behavior was masterminded by Plaintiff. A reader could just as plausibly infer that other individuals associated with VDARE, or even just avid readers of the site, were

---

[6]     Defendant also argues in a footnote that The Times is protected by Section 230 of the Communications Decency Act because Reuters, not The Times, provided the content. (*See* Def. Br. 21 n.7). Plaintiff does not respond to this argument. The Court need not reach this argument because Plaintiff's claim fails as a matter of defamation law.

behind the activity in question.  And Plaintiff provides no explanation for his claim that the May Article "accuse[s] Plaintiff of violating VDARE's 501(c)(3) status."  (SAC ¶ 177).  The Court does not credit this allegation as well-pleaded.

To the extent that Plaintiff believes that the Reuters reporters defamed him by declaring VDARE a "white supremacist site" (*see* SAC ¶¶ 171(b), 175), Plaintiff's defamation claim against Defendant nevertheless must be dismissed both because this is a statement of opinion and because The Times is merely a republisher of the Reuters article.  "A company … which simply republishes a work is entitled to place its reliance upon the research of the original publisher, absent a showing that the republisher had, or should have had, substantial reasons to question the accuracy of the articles or the *bona fides* of the reporter."  *Karaduman* v. *Newsday, Inc.*, 51 N.Y.2d 531, 550 (1980) (internal quotation marks omitted) (quoting *Rinaldi* v. *Holt, Rinehart & Winston*, 42 N.Y.2d 369, 383 (1977)).  The Times republished, verbatim, an article from Reuters, an indisputably reputable wire service.  (*See* May Article).  Reuters provided all content and Plaintiff gives no reason why The Times should have "question[ed] the accuracy of the article[] or the bona fides of the reporter." *Karaduman*, 51 N.Y.2d at 550.

In sum, Plaintiff does not adequately plead false statements of fact in the May Article, of and concerning him, made with actual malice by The Times. His fifth cause of action therefore fails as well.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint is hereby GRANTED.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   December 17, 2020
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

28